THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLARD P. DRISKELL IV, Defendant-Appellant.

Fourth District No. 4—90—0511

Opinion filed April 12, 1991.

Daniel D. Yuhas and Gary W. Peterson, both of State Appellate Defender's Office, of Springfield, for appellant.

John B. Huschen, State's Attorney, of Eureka (Kenneth R. Boyle, Robert J. Biderman, and Elliott Turpin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In October 1989, defendant, Willard P. Driskell IV, was charged, in two counts, with the unlawful possession and the unlawful delivery of more than 10 grams, but not more than 30 grams, of a substance containing cannabis under sections 4(c) and 5(c), respectively, of the Cannabis Control Act (Act) (Ill. Rev. Stat. 1989, ch. 56½, pars. 704(c), 705(c)). After a jury trial in January 1990, defendant was convicted of both counts. In July 1990, he was sentenced to probation under section 10 of the Act (Ill. Rev. Stat. 1989, ch. 56½, par. 710) for a period of three months and fined $1,500.

One of several arguments raised by defendant on appeal is that the trial court erred by restricting defendant's cross-examination of two key State witnesses. Because we agree with that argument and reverse and remand for a new trial, we will address other arguments raised by defendant only to the extent that they concern matters likely to arise on retrial.

A brief summary of the evidence presented at trial is as follows. During the evening hours of April 1, 1989, the automobile Brad Jones was driving was stopped by Sergeant Earnest Bigelow of the Woodford County sheriff's department for not obeying a stop sign. A license check on Jones revealed that his driver's license was suspended. Bigelow advised Jones that he was going to be arrested for driving while license suspended, that Jones should secure his car,

and go with Bigelow to the squad car. At the squad car, Bigelow told Jones that he would have to go to jail, get booked, and post $100 bond. Bigelow then asked Jones if Jones knew anything about any burglaries or drug activity in the county and advised Jones that, depending on how important and valid the information Jones gave Bigelow turned out to be, "possibly we could work out something as far as the charge of suspended driver[']s license" was concerned. Bigelow testified that he never got more specific than that, telling Jones that "basically it depended on what information and what he did for us as far as drugs."

Jones testified that, in response to Bigelow's remarks in the squad car, he ran "options through my mind of what I can do, and I told him what I could do for him, you know, to help him out." Jones told Bigelow that he could "set up a drug deal with somebody," but Jones did not mention any names at that time.

Bigelow never filed the driving while suspended ticket against Jones. Instead, Bigelow told Jones to try to get a drug deal going within the next few days.

Jones testified that after his conversation with Bigelow on the night of April 1, 1989, he called defendant and Jim Webster the next day to "set up the deal." Jones said they arranged for defendant to sell Jones an ounce of marijuana. Jones testified that earlier on April 2, he, Webster, and defendant met in the parking lot of a Pizza Hut restaurant where Jones worked, and defendant showed Jones the marijuana he had. However, Jones did not purchase it then because he did not have the money. They arranged to meet later in the evening for the delivery.

Jones then called Bigelow and arranged to meet him that night at a gas station. Jones arrived at the gas station with his girlfriend, Lynn Schaub, who was driving because Jones' driver's license was suspended. Bigelow searched Jones' vehicle and trunk, as well as Jones, to make sure that he did not have any drugs on his person or in his car. Bigelow testified that Schaub "let me look in her purse." Bigelow then gave Jones $130 "of drug money, which was marked as far as the serial numbers," and instructed Jones to make the drug deal and to meet Bigelow afterward. Bigelow advised Jones that once the delivery was made, Bigelow intended to stop the suspect vehicle and arrest the people inside.

Jones testified that after he and Schaub met with Bigelow, he and Schaub drove to the predesignated meeting place. Defendant and Webster arrived in Webster's father's car. Webster was driving. Jones got out of his car, walked up to the driver's side of Webster's

car, and handed defendant money through the window. Defendant then handed Jones a clear plastic baggie containing a green substance. Jones then returned to his car, and Schaub and he drove to their meeting place with Bigelow, where Jones gave the little plastic bag containing the marijuana to Bigelow.

Webster's testimony corroborated that of defendant (as subsequently indicated in this opinion), except, according to Webster, the other person in Jones' car was a male by the name of Hutchinson. Webster admitted to formerly being addicted to drugs and to having a delinquency adjudication based upon a burglary.

Schaub's testimony also substantially corroborated Jones' testimony. She testified that when Jones went to the driver's window of the other car, she was unable to see who was in that car.

There was no testimony that Webster's car was stopped after the transaction between defendant and Jones so that the "drug money" could be retrieved from defendant's possession.

The parties stipulated that the plastic baggie that Jones gave to Bigelow on the night in question contained 19.7 grams of cannabis.

Defendant's father testified that he and defendant were working on a car at their residence at the time defendant was supposedly meeting with Jones and Webster on April 2, 1989, at the Pizza Hut. Defendant testified that he never met with Jones and Webster at the Pizza Hut restaurant that afternoon but that Webster appeared at defendant's home later that evening, asked defendant "to go cruising," and they did so. Defendant testified that, at some point, Webster pulled over to the side of the road and another car pulled up behind them. Two people defendant said he "hardly knew," Jones and Brad Hutchinson, got out of the car and walked up to the driver's window of Webster's car. They gave Webster some money and he gave them a small bag. Prior to this transaction, defendant denied having any knowledge that the transaction was going to take place or that Webster had any cannabis in the car or on his person.

In December 1989, defendant filed a motion for additional discovery, which stated the following:

"1. Brad A. Jones is listed by the State as a material witness during the trial of this case.

2. In Discovery supplied by the State, a police report prepared by Sgt. Earnest Bigelow, dated 4-1-89, states, 'the driver then handed R/O a ticket identifying himself as Brad A. Jones. R/O was familiar with the name from a drug buy last month [March 1989] in which Brad was the supplier.'

3. Prior criminal violations on the part of Brad Jones (even if not yet resulting in convictions) are a proper subject for impeachment of his testimony in the trial of this cause.

WHEREFORE, defendant requests the Court to order the State to provide him with copies of all police reports dealing with the drug buy referred to in Officer Bigelow's report."

The court denied this motion.

Approximately one month after this motion was heard, the prosecutor made a motion *in limine* asking that defendant be prohibited from eliciting any testimony regarding the activities of Jones in March 1989 referred to in Bigelow's report, which was the subject of defendant's motion for additional discovery. In making this motion *in limine*, the prosecutor represented that, "Brad Jones does not know that that occurred." During further discussions with the court and defense counsel, the prosecutor made clear that his motion encompassed barring defense counsel from asking either Jones or Bigelow about Jones' activities in March 1989, as discussed in Bigelow's report. The trial court granted the motion subject to an opportunity of defense counsel, prior to his cross-examination of Jones, to show that Jones did know about the allegations of his drug dealing.

At trial, after Jones' direct examination was completed, defense counsel was given an opportunity to cross-examine Jones out of the presence of the jury. Jones was asked whether he had been engaged in a transaction in which he sold marijuana approximately a month before the first week of April 1989, and he replied, "No." Jones was asked if he was aware of the fact that the sheriff's department had another undercover agent to whom Jones sold marijuana, and Jones replied, "No." Jones then was asked whether the sheriff's department made any representations to him with regard to that prior sale, and Jones again replied, "No." The court then reaffirmed its order granting the State's motion *in limine* and barred any inquiry of Jones or Bigelow regarding Jones' alleged activities in March 1989.

■ In *People v. Triplett* (1985), 108 Ill. 2d 463, 485 N.E.2d 9, the Illinois Supreme Court extensively addressed the scope of defense cross-examination of a State's witness to show interest or bias. In *Triplett*, the defense sought to cross-examine the State's sole occurrence witness, a juvenile by the name of Whitmore. (*Triplett*, 108 Ill. 2d at 474, 485 N.E.2d at 14.) Two of the areas the defense sought to cross-examine Whitmore about were (1) his "contacts" with the police prior to the date of the murder for which

defendant was being tried, and (2) 10 other juvenile delinquency petitions that had been filed against Whitmore over a three-year period, all of which occurred prior to Whitmore's commitment to the Illinois Department of Corrections, Juvenile Division. (*Triplett*, 108 Ill. 2d at 474, 485 N.E.2d at 14.) In analyzing these issues, the supreme court wrote the following:

> "We note, initially, that a 'witness may be impeached by attacking his character by proof of conviction of an infamous crime. [Citation.] For this purpose only conviction may be proved, and proof of arrests, indictments, charges or actual commission of crime are not admissible.' (*People v. Mason* (1963), 28 Ill. 2d 396, 400[, 192 N.E.2d 835, 837].) However, showing bias, interest, or motive to testify is also an accepted method of impeachment. With this method of impeachment, 'the fact that a witness has been arrested or charged with a crime may be shown or inquired into where *it would reasonably tend to show that his testimony might be influenced by interest, bias or a motive to testify falsely.*' (Emphasis added.) (28 Ill. 2d 396, 401[, 192 N.E.2d 835, 837]; see *People v. Wilkerson* (1981), 87 Ill. 2d 151, 156[, 429 N.E.2d 526, 528]; *People v. Barr* (1972), 51 Ill. 2d 50, 51[, 280 N.E.2d 708, 710].) Therefore, although evidence of an arrest or indictment is not admissible to impeach credibility generally, it is admissible to show that the witness' testimony may be influenced by bias, interest, or motive to testify falsely.
>
> \* \* \*
>
> As stated, cross-examination to show bias, interest, or motive to testify falsely is a matter of right. \* \* \*
>
> Furthermore, when impeaching by showing bias, interest or motive, 'the evidence used must give rise to the inference that the witness has something to gain or lose by his testimony' and, therefore, the evidence used must not be remote or uncertain. [Citations.]
>
> In addition, the defendant need not show before cross-examining a witness as to the witness' possible bias, interest, or motive 'that any promises of leniency have been made or any expectations of special favor exist in the mind of the witness. [Citation.] Further, defense counsel is entitled to inquire into such promises or expectations whether based on fact or imaginary. [Citations.]' *People v. Freeman* (1981), 100 Ill. App. 3d 478, 481[, 426 N.E.2d 1220, 1222]." *Triplett*, 108 Ill. 2d at 475-76, 485 N.E.2d at 15.

With the above principles in mind, the court concluded that "contacts" by juveniles with police officers were too remote, uncertain, and speculative to be admissible in cross-examination. (*Triplett*, 108 Ill. 2d at 477, 485 N.E.2d at 16.) The court quoted approvingly as follows from *People v. Merz* (1984), 122 Ill. App. 3d 972, 977, 461 N.E.2d 1380, 1384-85:

"'[W]e believe that under the circumstances here where the juvenile witness was arrested for several offense[s] and "talked to" as part of a station adjustment procedure without any formal proceedings or supervision resulting therefrom, all occurring prior to the date of defendant's alleged crime and trial, the evidence sought to be introduced to show bias, interest or motive was too remote, uncertain, and speculative to be admissible for impeachment purposes. Defendant must at least present direct evidence, rather than uncertain or remote evidence, that such bias exists.'" *Triplett*, 108 Ill. 2d at 477, 485 N.E.2d at 16.

Regarding the delinquency petitions that were dismissed against Whitmore, the supreme court concluded that delinquency petitions based upon two burglary charges and a theft charge could have been reinstated by the State at the time of the defendant's retrial. (*Triplett*, 108 Ill. 2d at 482, 485 N.E.2d at 18.) In so holding, the court wrote the following:

"We believe that 'the jury was entitled to know the nature of [the witness'] criminal charges "in order that it [could] have before it complete information so as to be better able to resolve the bias question." [Citation.]' (*People v. Reese* (1984), 121 Ill. App. 3d 977, 988[, 460 N.E.2d 446, 453].) Since the 'exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination' (*Davis v. Alaska* (1974), 415 U.S. 308, 316-17, 39 L. Ed. 2d 347, 354, 94 S. Ct. 1105, 1110), we hold that the defendant was denied his constitutional right to confront the witnesses against him when the circuit court precluded him from questioning Whitmore with respect to the juvenile delinquency petitions which could have been reinstated against the witness at the time of the defendant's retrial." *Triplett*, 108 Ill. 2d at 482-83, 485 N.E.2d at 18-19.

We note that in *Triplett*, the supreme court held the defendant was entitled to cross-examine Whitmore about the two burglary delinquency charges and the theft delinquency charge even though all three charges had been dismissed well before defendant's retrial

and there was no suggestion in that opinion that the State ever intended to reinstate those charges.

In summing up, the supreme court wrote that a defendant must show that the State has "some 'leverage' over the witness" in order to justify his claim to cross-examine a State's witness to demonstrate that witness' interest, bias, or motive to testify falsely. (*Triplett*, 108 Ill. 2d at 481-82, 485 N.E.2d at 18.) Obviously, the supreme court found the possible reinstatement of these juvenile delinquency charges to constitute sufficient "leverage," however remote the reinstatement of those charges might have been.

■ Thus, based upon *Triplett*, we conclude that defendant in the present case should have been permitted the opportunity to cross-examine both Jones and Bigelow regarding the information in Bigelow's report that Jones "was familiar [to Bigelow] from a drug buy [in March 1989] in which [Jones] was the supplier." We find that this line of cross-examination, seeking to elicit bias on the part of Jones, was "direct and positive, not remote or uncertain." (*People v. Davis* (1990), 193 Ill. App. 3d 1001, 1004, 550 N.E.2d 677, 679.) We also conclude that Bigelow's report reveals information which may well give the police some "leverage" over Jones (see *Triplett*, 108 Ill. 2d at 481-82, 485 N.E.2d at 18). We further find that this information gives rise to the inference that Jones "had something to gain or lose by his testimony," and may have believed that, if arrested or charged for the drug transaction referred to in Bigelow's report, "things might go better" for Jones if the State was pleased with his testimony against defendant in this case. (See *Triplett*, 108 Ill. 2d at 476, 485 N.E.2d at 15.) Whether it is true that "things might go better" for Jones is not important; what is important is that Jones might have *believed* that to be true. Accordingly, we hold that the trial court's decision barring this line of cross-examination of both Jones and Bigelow constituted a clear abuse of its discretion, resulting in manifest prejudice to the defendant. *Davis*, 193 Ill. App. 3d at 1004-05, 550 N.E.2d at 679.

In so holding, we are aware of the fact that, at the time of trial, Jones had not yet been charged with any offense arising from the matters contained in Bigelow's report, and, for all we know, may never be charged. However, in the peculiar and unusual circumstances of this case, we do not believe that fact can be determinative, especially given that the decision whether to arrest or charge Jones resides unilaterally with the police and prosecution. The police in this case chose to reveal Jones's alleged criminal conduct in a police report prepared in connection with *defendant's* al-

leged criminality, not *Jones'* criminality. In view of the pretrial motion based on Bigelow's report and the hearing on that motion, we are extremely skeptical that Jones, by the time trial began, was not fully aware of what was contained in Bigelow's report. Our skepticism is increased by the prosecutor's firm representation, prior to trial, that Jones knew nothing about the information in Bigelow's report. We are unaware of how the prosecutor could be able to make that statement to the court other than if he had informed Jones about what Bigelow's report contained and Jones then denied any knowledge regarding that matter.

We emphasize that the *point of focus*, when determining whether a particular subject matter is impeaching, *ought to be on the time the witness in question is testifying before the trier of fact*. If cross-examination on a particular subject might reveal an interest, bias, or motive to testify falsely on the part of that witness, then the cross-examiner should be permitted to pursue that line of cross-examination. In the present case, that standard has been met as a result of the information revealed in Bigelow's report.

■ Having determined that the defense may properly cross-examine Jones and Bigelow about Bigelow's report, we further determine that, on remand, defendant's motion for production of Bigelow's reports concerning Jones' alleged drug dealing should be granted under Supreme Court Rule 412(h). (134 Ill. 2d R. 412(h).) In so holding, we should not be understood as warranting in any way "fishing expeditions" by defendants into police records or into police reports concerning any given witness whom the State may intend to call at trial. What makes this case different is the presence of *specific, articulable grounds*, cited in defendant's motion for production, which state with specificity both what the defendant is seeking and the factual basis for his doing so.

For the reasons stated, defendant's conviction is reversed and the cause is remanded for a new trial.

Reversed and remanded.

LUND, P.J., and KNECHT, J., concur.