SECOND DIVISION

March 28, 2000

No. 1-98-0883

THE PEOPLE OF THE STATE OF ILLINOIS, )   Appeal from the 

)   Circuit Court of

Plaintiff-Appellee, )   Cook County.

)

)

)

LAVELLE NUTALL, )   Honorable Loretta

)   Hall Morgan, Honorable 

Defendant-Appellant. )   Mary Ellen Coughlan,

)   Judges Presiding.

JUSTICE McBRIDE delivered the opinion of the court: 

On November 21, 1997, defendant was found guilty by a jury of the murder of Gus Patterson under an accountability theory before the Honorable Loretta Hall Morgan.  720 ILCS 5/9-1(a)(1) (West 1996); 720 ILCS 5/5-2(c) (West 1996).  Prior to defendant's sentencing, Judge Morgan passed away and as a result, the Honorable Mary Ellen Coughlan presided over defendant's sentencing hearing.  Judge Coughlan sentenced defendant to thirty years imprisonment for his involvement in Patterson's murder.

On appeal, defendant argues that the trial court: (1) deprived him of his sixth amendment right to confront witnesses by limiting his cross-examination of a witness; (2) abused its discretion when it refused to give his non-Illinois Pattern Jury Instructions (IPI) regarding the law of accountability; and (3) abused its discretion in sentencing him to 30 years' imprisonment.

Before defendant's trial, the prosecution presented a motion 
in
 
limine
 to bar defense counsel from asking witness Christopher Brandon whether or not he should have been in custody as a result of pleading guilty to the charge of delivery of a controlled substance. Defense counsel claimed that Brandon was supposed to be in custody serving a six-month sentence as part of his probation but had been released
 due to a clerical error.  Defense counsel argued that because the witness was supposed to be in custody but was not,  he  was entitled to explore Brandon's motive to testify favorably for the prosecution.  The trial court 
held that although defense counsel could ask Brandon questions about whether he had been convicted, what offense he had been convicted of, whether he had spent time in prison, whether he was on probation, and when he was released from prison; he would be prohibited from eliciting any information about a clerical error affecting Brandon's custodial status.  In  ruling the trial judge stated that there was no actual confirmation that a clerical error had occurred; that there was no evidence to support defendant's claim that the witness had a six-month sentence to serve; and that even if such information were accurate it did not bear on Brandon's credibility as a witness and thus, the alleged error was not relevant.

The first witness called by the prosecution was Christopher Brandon.  Brandon testified that he and the decedent Gus Patterson had been friends for several years.  On the night of the shooting Brandon and Patterson were riding their bicycles in the vicinity of 93
rd
 and Essex in Chicago.  As they were riding along the street they noticed a large crowd of people.  Then someone in the crowd yelled "get those hooks."  Brandon said that the term "hooks" was a nickname for a gang called the Blackstones, to which he and Patterson belonged.  Brandon also stated that as he and Patterson rode by the crowd someone yelled "get the gun folks."  Brandon then observed two males get into a black and white car.  Before Brandon and Patterson could leave the block, Brandon said that he and Patterson were chased by both male and female members of the crowd who threw bottles at them.  

Brandon and Patterson rode their bikes off the block in an attempt to avoid the two males they had previously seen get into  the black car.  They rode their bikes the wrong way down a one-way street and eventually entered a viaduct.  When they came out of the viaduct Brandon noticed the black car he had first seen at 93
rd
 and Essex.  The car pulled along side of them and Brandon heard someone yell out "[w]hat's up now bitch ass n******."  Brandon then watched the driver reach out his window and fire a shot from a gun which struck Gus Patterson.  After Patterson was shot, the car pulled away and Patterson fell off his bike and began to bleed from his mouth.  Brandon stopped riding and pulled Patterson to his side.  Patterson was eventually assisted by two other individuals who called an ambulance.  As a result of his wounds Gus Patterson died.

In assisting police in their investigation, Brandon led police to the location where he first saw the black and white car.  While he was with the police Brandon saw the same car and  pointed it out to police.  Later, Brandon viewed a lineup and he positively identified Rogers Christal as the both the driver of the car and the person who actually shot Patterson.  Brandon could not positively identify defendant as the passenger, but did say that he looked similar to the person he saw in the passenger seat of the black car the day Patterson was shot.  Brandon then left the witness stand and diagramed on a piece of paper the events he had just testified to.

On direct examination Brandon further testified that in 1994 he pled guilty to having a weapon on school grounds and spent one year in an Illinois Youth Center for that offense.  He also said that he recently received two years' probation for delivery of a controlled substance and as a result spent some time in jail.  During cross-examination, defense counsel questioned Brandon about his 1994 conviction for possession of a handgun on school grounds and brought out that Brandon spent one year in a juvenile incarceration facility.  Defense counsel also established that Brandon's conviction for delivery of a controlled substance occurred when Brandon sold crack cocaine to an undercover police officer.  Brandon further testified that the week before defendant's trial he had pled guilty to the delivery charge in addition to receiving probation.  Defense counsel also elicited that Brandon had just gotten out of jail the morning of defendant's trial.  

Detective Rickey Boone of the Chicago Police Department testified that he was assigned to investigate the murder of Gus Patterson.  Boone testified he and other officers went to the home of defendant's mother searching for defendant.  Although they did not find defendant at that time, they left their business cards with instructions for defendant to contact them when he arrived at this location.  Thereafter, Boone was contacted by defendant's mother and police went back to her home and arrested defendant.  After advising defendant of his 
Miranda
 warnings Boone and his partner Detective Spencer interviewed defendant who initially denied any involvement in Patterson's shooting.  Boone also interviewed Antonio McDonald.  McDonald directed police to the location of the gun used in the shooting and the gun was recovered.

Boone met with defendant once again, but this time he was accompanied by Assistant State's Attorney Smitko.  Before questioning the defendant, Smitko advised the defendant of his 
Miranda
 rights.  Once again, defendant denied any involvement in Patterson's shooting, however, when he was questioned this time and told the gun had been recovered, defendant decided to give a statement.  When defendant actually gave this statement both Boone and Smitko were present.

Assistant State's Attorney Smitko confirmed that upon first interviewing defendant, defendant denied any involvement in Patterson's shooting.  Smitko then spoke with both  Rogers Christal and Antonio McDonald.  After confronting the defendant with the results of these conversations, defendant acknowledged that he was present during the shooting.  Defendant then chose to give a handwritten statement.  Defendant's statement indicated that on the night of Patterson's shooting he saw two people riding their bicycles.  As the people on bicycles approached, defendant heard one of them say "is that him," with other answering "yes."  Although defendant never saw either of these persons with a gun, he did say that he saw one of them reach behind his back.  Thinking this person had a gun defendant ran into an alley.    

While in the alley defendant saw Rogers Christal who told defendant to come with him in his car.  Defendant said that he knew Christal planned to shoot the two individuals on their bicycles before he got into Christal's car.  Once in the car defendant stated that Christal placed a gun in between the two of them.  Christal and defendant then caught up with Patterson and Brandon and Christal asked defendant if he was going to shoot at either of them.  Defendant responded that he would not because he didn't want to shoot across Christal.  According to defendant's statement, Christal grabbed the gun and while steering the car with one hand and with the other hand he shot twice at Brandon and Patterson.  After firing the weapon, Christal and defendant returned to 92
nd
 and Essex and parked Christal's car.  Defendant's statement then reflects that Christal "told him to get rid of the gun."  Defendant admitted that he took the gun and gave it to Antonio McDonald to get rid of it.  Afterwards, defendant went home.    

Defendant gave a slightly different version of the shooting incident at trial.  Defendant admitted that he was a member of the Gangster Disciples and arrived at the corner of 92
nd
 and Essex by receiving a ride from Rogers Christal.  Besides giving him a ride there, Christal told defendant he would also give him a ride home later.  Defendant stated he saw two individuals ride up the block with their baseball caps positioned in a manner that indicated they were members of the Blackstone Gang.  Defendant watched these individuals ride up to 93
rd
 and Essex and circle around.  Eventually, they came close enough to defendant that he heard one of them say, "Is that them, is that them?"  One of the two responded "yes" and the other responded by saying "get him."  Defendant testified that Brandon was one of the two people he saw that day and that he thought Brandon was reaching for a gun.  Defendant then ran into a gangway and denied hearing or yelling anything to Brandon or Patterson as they rode their bikes.  Defendant did not see anyone throw anything at either Brandon or Patterson.   When he came out of the gangway, defendant saw Rogers Christal walking toward his car, a black 1979 Chevrolet.  Christal told defendant he would still give him a ride home.  When he got into Christal's car, defendant thought Christal might be holding a gun.  Once in the car defendant realized that Christal did in fact have a gun which was placed in between the defendant and Christal.  Defendant, however, states that he was unaware of this gun before entering Christal's car.  Defendant asked Christal why he had the gun, to which Christal responded, "for our protection."  Upon seeing Brandon and Patterson, Christal asked defendant if those were the two individuals they had seen earlier on bikes and defendant told him that he did not know.  As they approached Brandon and Patterson, Christal asked defendant to shoot either Patterson or Brandon but defendant declined, saying he did not want to shoot across Christal.  Defendant denied that he planned to shoot anyone on the day Patterson was shot.  After Patterson was shot, Christal and defendant returned to 92
nd
 and Essex where Christal gave defendant the gun and told him to get rid of it.  Defendant then gave this gun to Antonio McDonald.  

After defendant concluded his testimony but before closing arguments, defense counsel requested the trial court to give a non-IPI Instruction with respect to the issue of mere presence and whether or not it makes an individual accountable for the conduct of another.  This request was denied and both the prosecution and defense counsel proceeded to closing arguments.  The jury found defendant of the murder of Gus Patterson.

Due to the death of Judge Morgan, Judge Coughlan presided over defendant's sentencing hearing.  During defendant's sentencing hearing, defense counsel argued that Judge Morgan had previously indicated at a Supreme Court Rule 402 conference (134 Ill. 2d R. 402), that based on the facts before her, in exchange for a plea of guilty she would impose a prison term of twenty years.  Defense counsel also said that he and defendant were told that defendant would not be penalized for taking his case to trial.  Consequently, at the sentencing hearing defendant asked  the trial court to impose the statutory minimum of twenty years.  Because Judge Coughlan was not present for defendant's 402 conference she said she did not feel bound by any discussions between the defendant and Judge Morgan with respect to possible prison terms.  In imposing sentence, Judge Coughlan detailed the facts of the shooting, found that defendant failed to show any remorse for his actions and sentenced defendant to a prison term of thirty years.  

Immediately after the sentence was imposed, defense counsel asked the trial court to reconsider its sentence in light of the pretrial representations made to defendant at the 402 conference.  Counsel argued that these representations directly impacted defendant's decision whether or not to proceed to trial.  The trial court denied this motion.  Subsequently, defense counsel followed his oral motion to reconsider with a written motion for the trial court to reconsider its sentence.  During this hearing, defense counsel renewed his argument that representations were made to defendant in the pretrial 402 conference and he also argued that defendant should not be deemed as culpable for the murder of Gus Patterson as the co-defendant who pled guilty.  The trial court rejected this argument and this appeal followed.

Defendant's first contention on appeal is that he was denied his constitutional right to confront witnesses when he was not allowed to explore the details of Christopher Brandon's custodial status or lack thereof.
  
U.S. Const., amend. VI.  Specifically, defendant contends that he was denied his constitutional right of confrontation because defense counsel was prohibited from eliciting that Brandon was sentenced to serve six months in Cook County Jail, but was released early due to a clerical error.
  
Because Brandon was the only occurrence witness who testified to hearing comments such as "get those hooks" and "get the gun folks," defendant argues that the prosecution's case hinged solely on Brandon's testimony.  Additionally, because this testimony could have been considered by the jury in assessing the defendant's state of mind and that this "might have contributed to its crossing this very line in this accountability case ***
," 
defense counsel should have been allowed to explore Brandon's potential bias with respect to the alleged clerical error.  Simply put, if Brandon's sentence was erroneously reduced, Brandon may have felt compelled to testify favorably for the State fearing that the clerical error would be corrected if he did not.  

A defendant's right to cross-examine a witness concerning possible biases, prejudices, or ulterior motives is protected by both the Federal and State Constitutions.  
People v. Ramey
, 152 Ill. 2d 41, 67, 604 N.E.2d 275 (1992); U.S. Const., amends. VI, XIV; Ill. Const., 1970, art. I, §8 citing 
Davis v. Alaska
, 415 U.S. 308 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974).  Because the exposure of  "a witness' motivation in testifying is a proper and important function of the constitutionality protected right of the cross-examination, the widest latitude should be given the defense on cross-examination when trying to establish a witness' bias or motive."  
Ramey
, 152 Ill. 2d at 67; 
People v. Furby
, 228 Ill. App. 3d 1, 4, 591 N.E.2d 533 (1992) (holding that the constitutional right to cross examination must be satisfied first before the court can exercise its discretion in limiting the scope or extent of cross examination").

It is also well established that a witness' custodial status is a proper subject of cross-examination when attempting to demonstrate that the witness' testimony may be biased against a defendant.  See 
Alford v. United States
, 282 U.S. 687, 693, 51 S. Ct.  218, 75 L. Ed. 2d 624 (1931) (holding error to deny a defendant an opportunity to elicit witness' custodial status during cross-examination in order to show witness' testimony may be affected by fear or favor growing out of his current custodial status); 
People v. Triplett
, 108 Ill. 2d 463, 480-81, 485 N.E.2d 9 (1985) (defendant entitled to elicit on cross-examination that occurrence witness testifying against him was in custody).

This right is not subject to the trial court's discretion, however, the court may preclude repetitive or unduly harassing interrogation.  
Ramey
, 152 Ill. 2d at 67-68; 
Triplett
, 108 Ill. 2d at 475.  Thus, 

"** a defendant need not show interest or motive in that any promises of leniency have, in fact, been made to the witness by the State or that any expectations of special favor exist in the mind of the witness, before cross-examining a witness as to possible bias.  Further, the defense is entitled to inquire into such promises or expectations whether they are based on fact or are simply imaginary." 
Ramey
, 152 Ill. 2d at 67-68 citing 
Triplett
, 108 Ill. 2d at 475-76.

See also 
People v. Tomes
, 284 Ill. App. 3d 514, 520, 672 N.E.2d 289 (1996) (holding "[i]t is well established that cross examination to show that a witness might be vulnerable to pressure, whether real or imagined, from the State regarding a pending charge is a matter of right").  "To this end a defendant has the right to cross-examine a witness regarding pending criminal charges without first establishing that the witness was promised something in return for his testimony."  
People v. Ciavirelli
, 262 Ill. App. 3d 966, 977, 635 N.E.2d 610 (1994) Moreover, where the facts reasonably warrant the conclusion that the witness might be motivated to testify against the defendant by a promise of leniency, defendant should be allowed to explore that possibility on cross-examination.  
Ciavirelli
, 262 Ill. App. 3d at 977.

Although the right of cross-examination is not subject to the court's discretion, the scope of cross-

examination does rest within the discretion of the trial court.  As such, its rulings will not be overturned absent a clear abuse of that discretion.  
People v. Britt
, 265 Ill. App. 3d 129, 146, 638 N.E.2d 282 (1994); 
People v. Terrell
, 185 Ill. 2d 467, 498, 708 N.E.2d 309, 325 (1998).  In order for a defendant to prevail on a claim that he was denied a sufficient opportunity to confront witnesses at his trial through cross-

examination, the defendant must demonstrate the trial court's limitation constituted an abuse of discretion resulting in manifest prejudice.  
Britt
, 265 Ill. App. 3d at 146; 
Terrell
, 185 Ill. 2d at 498.

Contrary to defendant's assertions, the prosecution counters that although a witness may be cross-

examined on matters that would show bias or a motive to testify falsely, the court may limit a cross-

examination where the jury has been made aware of adequate factors concerning the relevant areas of impeachment, even if the defendant has been prohibited from pursuing other areas of inquiry.  
People v. Herrera
, 257 Ill. App. 3d 602, 616, 629 N.E.2d 546 (1994).  Relying on 
People v. Sanders
, 143 Ill. App. 3d 402, 407, 493 N.E.2d 1 (1986), the prosecution argues that Brandon's potential bias as a witness caused by the uncertainty of his custodial status is evidence that is to remote to be admissible, even to show a witness' bias.  
Sanders
 held: 

"To establish an abuse of discretion, defendant must set forth an offer of proof at trial which indicates that the evidence he sought to introduce was positive and direct on the issue of bias or motive to testify falsely.  Where no proof as to the competency or relevancy is offered or where the offer is unsatisfactory, the trial court may properly preclude cross-examination."  
Sanders
, 143 Ill. App. 3d at 407.  

Thus, the prosecution argues that the clerical error resulting in Brandon's alleged freedom did not possess a sufficient nexus to the possibility of Brandon giving biased testimony.  We agree.   

There is no question that a defendant is permitted to explore a witness' custodial status in order to expose any potential bias the witness may have against the defendant.  
Ramey
, 152 Ill. 2d at 67-68; 
Alford
, 282 U.S. at 692-694.  In accordance with this principle, we are mindful that a defendant is to receive the widest possible latitude when conducting a cross-examination.  
Ramey
, 152 Ill. 2d at 67.  Nevertheless, this important principle is still subject to limitations where the evidence sought provides an insufficient nexus to the proposition it supposedly supports.  See 
Sanders
, 143 Ill. App. 3d at 407.

In the instant case, defense counsel's request to question Brandon about his custodial status was denied in part because there was no evidence to support defendant's claim that Brandon was in fact released from custody due to a clerical error.  Judge Morgan indicated the following at the hearing on the prosecution's motion 
in
 
limine
: 

"Counsel, no I am not going to allow that.  If you want to ask him has he been convicted of whatever he was convicted of - - I have no idea what it was, and did that involve some jail time, yes, it did but I am not going to let you get into that because I am not satisfied that I know all the facts underlying that [clerical error]...I don't know if he actually got six months or didn't get six months.  I don't know."

The trial judge further commented:

"I am not going to let you ask him whether he's in custody.  He is not in custody.  Now if you want to ask him did he get probation with something...Did you have to do some jail time with that, yes I did, I will allow that, but I am not going to allow you to get into whether he was released this morning or wasn't.  I don't see what the relevance of that is.

If you want to say were you just released this morning, that's fine but I'm not going to let you get into aren't you supposed to be in jail.  I don't even know that to be a fact, but whether or not there was a clerical error that does not go to his veracity, bias or anything."  

Like the trial court, we are unable to determine what if any merit there was to defense counsel's claim.  We note that the record is silent with respect to why defense counsel believed such a clerical error had in fact occurred or how such a claim could be established.  We presume that if counsel had an explanation it would have materialized at least in part, during the prosecution's motion 
in
 
limine
 to preclude defense counsel's inquiry into this matter.

We agree that defense counsel is not required to show prior to a cross-examination that a witness is testifying favorably for the prosecution in exchange for leniency in order to explore the possibility that witness may be biased.
  
People v. Kellas
, 72 Ill. App. 3d 445, 454, 389 N.E.2d 1382 (1979) (cross-

examination is exploratory in nature and thus, attorney cannot know in advance what facts may be elicited).  These situations however, generally involve witnesses suspected of giving biased testimony based upon an expectation of leniency have either a tangible pending charge or the charge stricken with leave to reinstate.  See 
In re T.S.
, 287 Ill. App. 3d 949, 679 N.E.2d 468 (1997); 
Tomes
, 284 Ill. App. 3d at 514; 
Ramey
, 152 Ill. 2d at 67; 
People v. Perez
, 209 Ill. App. 3d 457, 568 N.E.2d 250 (1991); 
Triplett
, 108 Ill. 2d at 463; 
Driskell
, 213 Ill. App. 3d at 196; 
People v. Young
, 206 Ill. App. 3d 789, 564 N.E.2d 1254 (1990); 
People v. Freeman
, 100 Ill. App. 3d 479, 426 N.E.2d 1220 (1981); but 
Cf.
  
People v. Adams
, 129 Ill. App. 3d 202, 472 N.E.2d 135 (1984)

In the instant case, Brandon had neither a pending charge, an arrest stricken with leave to reinstate, or a probation violation looming.  In fact, Brandon had already pled guilty and had been given a probationary sentence for that charge.  Here, the trial court was given a bare assertion that Brandon was free from jail due to a clerical error.  Moreover, although the record demonstrates that Brandon had pled guilty the week before giving his testimony and received two years' probation, there is no evidence in the record to support the claim that he received six months in jail, or how much time, if any, he had already served of that alleged six-month sentence, or that he had not completed the jail portion of his sentence as defendant contends.  Thus, there is simply no basis to believe that Brandon was released earlier than expected and thus possessed either an objective or subjective expectation of leniency. The record also reveals that the instant case was a retrial which Judge Morgan had originally presided over and that this prosecution witness had testified at the previous trial.  We presume that his testimony was consistent with the testimony at the instant trial and base such a presumption on the fact that Brandon was not impeached by any of his prior testimony given  at the first trial.  We also note that, Brandon testified at the first trial in July 1997, but was not arrested for the offense of delivery of a controlled substance until August 1997, one  month after he gave testimony at defendant's first trial.  Thus, at the time the delivery charge arose Brandon had already testified as a prosecution witness.

The record is also devoid of any showing that Brandon received a reduced sentence or consideration from the prosecution when he pled guilty to the delivery charge only one week before this trial.  Under these facts we do not find that the trial court abused its discretion when it prohibited defense counsel from inquiring into Brandon's custodial status based upon a clerical error, since the evidence was too remote and uncertain to be admissible.  
Cf
. 
Tomes
, 284 Ill. App. 3d at 520 ("where there is no expectation of leniency from the State regarding the pending charge, the trial court may prohibit cross-examination regarding the charge"); 
Sanders
, 143 Ill. App. 3d at 409 (unsupported allegation that witness had a pending charge does not rise to the level of certainty or directness required for admissibility). 

Assuming 
arguendo
 that the trial court abused its discretion when it prohibited defense counsel from inquiring into Brandon's custodial status, we would still conclude that the error was harmless.  The improper denial of a defendant's constitutional right to cross-examination does not always mandate reversal, but may be found to be harmless error.  
People v. Davis
, 185 Ill. 2d 317, 338, 706 N.E.2d 473 (1998); 
Delaware v. Van Arsdall
, 475 U.S. 673, 684, 106 S. Ct. 1431, 1438, 89 L. Ed. 2d 674, 686 (1986); see also 
Chapman v. California
, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967).  

"The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt.  Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts.  These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case."  
Davis
, 185 Ill. 2d at 337 citing 
Van Arsdall
, 475 U.S. at 684.

Although Brandon's testimony as an occurrence witness supported the prosecution's case, we find Brandon was used primarily to corroborate the defendant's statement.  For example, Brandon testified that an initial confrontation between himself, Patterson and a large group of youths occurred and that Rogers Christal was the driver of the black car and the actual shooter.  He also confirmed that the shooting took place after the initial confrontation some blocks away.  On the other hand, Brandon never positively placed defendant in Rogers Christal's car, and never identified defendant as being the person who specifically uttered any particular statements.  

Defendant's statement and testimony at trial however, definitively placed him 93
rd
 and Essex when Patterson and Brandon were initially confronted by defendant's gang.  Defendant's statement also revealed that he and Christal were together in Christal's car when Patterson was shot.  More importantly, the statement explained that defendant went with Christal knowing that Christal had a gun and intended to shoot Patterson or Brandon if he found them.  We also know that defendant helped dispose of the murder weapon at Christal's request and succeeded by giving the weapon to Antonio McDonald.  Ultimately, the only reason this weapon was recovered was because of the  information Antonio McDonald gave to the police.  If we examine the extent of the cross-examination that was otherwise allowed, we note that the jury knew the following about the 17-year-old witness: (1) Brandon was a former gang member and had a teardrop tattooed under his eye to signify the death of another fellow gang member; (2) Brandon had spent a year in a juvenile detention center for possessing a gun on school grounds; (3) Brandon pled guilty and he was also convicted of delivery of a controlled substance for selling crack cocaine to an undercover police officer; and (4) Brandon was currently on two years' probation for that offense.

In reviewing the evidence presented, the prosecution's case was compelling without Brandon's testimony.  Another occurrence witness, Anthony LeGrone, testified that he approached the viaduct that night while in his car.  He heard gunshots and then saw two young men on bicycles come out of the viaduct.  One of the boys was holding his side.  The boy fell and the other young man on the bike came to his aid.  Mr. LeGrone approached both of them and when he realized that one had been shot, he went to call "911".

We have already summarized defendant's statement and testimony, but the significant aspects of that evidence indicate that defendant knew 
before
 entering Christal's car that Christal had a gun and that Christal was going to shoot Patterson and Brandon, yet he got in the car and remained with Christal throughout the shooting and then further assisted him by taking the gun from Christal and disposing of it.  The police recovered the gun after a conversation with McDonald.  Forensic examiner Warner testified that upon comparing the bullet recovered from Patterson's body with the weapon recovered, it was Warner's opinion that the bullet was fired from that firearm to the exclusion of all others.  Photographs of the scene and the black car used in the shooting were also introduced into evidence.  In light of the foregoing analysis, we find that even if an error occurred from limiting defense counsel's cross-examination, such an error was harmless since it was defendant's own statement and trial testimony that established much if not all of the evidence used in convicting defendant.  

Defendant next contends that the trial court abused its discretion by refusing to give a non-IPI instruction to the effect that a defendant's mere presence at the scene of an offense is not enough to find that party accountable for the principal's actions.  Because defendant's argument hinged largely on the contention that defendant was no more than present with co-defendant Rogers Christal when Patterson was shot, he offered the following non-IPI instructions to the court:

"Mere presence of the defendant at or in the vicinity of the scene of the crime does not make him legally responsible for the conduct another.  Even consent or knowledge by the defendant that a crime was being committed would not constitute aiding or abetting."

"Mere presence at the commission of an alleged offense without any affirmative act of assisting, abetting, or encouraging the commission of the act is not sufficient to render someone accountable for the commission of the offense."  

The court rejected this instruction and instead gave IPI 5.03 which states in pertinent part:

"A person is legally responsible for the conduct of another when, either before or during the commission of an offense, and with the intent to promote or facilitate the commission of the offense, he knowingly solicits, aids, abets, agrees to aid, or attempts to aid the other person in the planning or commission of the offense.

The word 'conduct' includes any criminal act done in furtherance of the planned and intended act."  Illinois Pattern Jury Instructions, Criminal No. 5.03 3d ed. 1995.

According to Supreme Court Rule 451(a) (134 Ill. 2d R. 451(a)), juries in criminal cases must be instructed pursuant to the Illinois Pattern Jury Instructions, Criminal (IPI Criminal), unless the court determines that the particular instruction does not accurately state the law.  
People v. Banks
, 287 Ill. App. 3d 273, 279, 678 N.E.2d 348 (1997); 
People v. Macri
, 185 Ill. 2d 1, 705 N.E.2d 772 (if an appropriate IPI instruction exists it must be used).  In reviewing the adequacy of instructions, this court must consider the jury instructions as a whole to determine whether they fully and fairly cover the law. 
People v. Hines
, 257 Ill. App. 3d 238, 244, 629 N.E.2d 540 (1993).  "The function of instructions is to convey to the jury the correct principles of law applicable to the evidence so the jury can apply the proper legal principles to the facts and arrive at a proper conclusion based on the law and the evidence."  
People v. Peebles,
 125 Ill. App. 3d 213, 217, 465 N.E.2d 539 (1984).    

If an IPI instruction does not the state the law the proffered instruction given on that subject should be simple, brief, impartial, and free from argument.  If an appropriate IPI instruction does exist it must be used, however, the decision to give or refuse a non-IPI instruction is a matter within the sound discretion of the trial court.   See 134 Ill. 2d R.451(a); 
People v. Thomas
, 175 Ill. App. 3d 521, 528, 529 N.E.2d 1071 (1988); see also 
People v. Sims
, 265 Ill. App. 3d 352, 362, 638 N.E.2d 223 (1994) (holding that Illinois courts give preference to applicable IPI instructions unless that particular instruction does not accurately state the law.   In that case "***those instructions should be modified or supplemented when the facts of a particular case make them inadequate").

   An abuse of discretion occurs in refusing to give a non-IPI instruction when there is no IPI instruction applicable to the subject on which the jury should have been instructed and the jury was therefore, left to deliberate without proper instructions.  
Thomas
, 175 Ill. App. 3d at 528.  Refusal to give a Non-IPI instruction does not constitute an abuse of discretion however, if there is an applicable IPI instruction and/or the essence of the refused instruction is covered by other given instructions.  
Thomas
, 175 Ill. App. 3d at 528; see 
People v. Ehlert
, 274 Ill. App. 3d 1026, 1037, 654 N.E.2d 705 (1995) ("***court must give a non-IPI instruction "if the refusal to give a non-IPI instruction results in the jury not being instructed as to a defense theory of the case which is supported by some evidence"). 

The argument of whether a defendant is entitled to a non-IPI jury instruction regarding "mere presence" as it applies to the offense of accountability has been addressed and rejected several times prior to this case.  See 
People v. Ayers
, 264 Ill. App. 3d 757, 760, 636 N.E.2d 600 (1993); 
People v. Wilson
, 257 Ill. App. 3d 670, 697-98, 628 N.E.2d 472 (1993) (rejecting defendant's non-IPI instruction on mere presence since the jury was adequately instructed on defendant's theory of the case and because the standard IPI accountability instruction contains the essence of the "mere presence instruction"); see also 
Thomas
, 175 Ill. App. 3d 521, 529, 529 N.E.2d 1071 (1988) 

(holding "that the essence of the 'mere presence' instruction was already incorporated in or encompassed [by the standard IPI instruction] --which advise the jury that a defendant must be found innocent unless the State has proved beyond a reasonable doubt that before or during the commission of the defined offense he/she, with the intent to promote or facilitate the commission of that offense, knowingly solicited, aided, abetted, agreed or attempted to aid the other person in the planning or commission of it--and that the juries were, therefore, fully and accurately apprised of the law constituting the theory of defense, 
i.e.
, that mere presence at the scene of a crime or during its commission is insufficient to sustain a conviction."   

In the instant case, the jury was given the IPI instructions on the presumption of innocence, the burden of proof, the definition and elements of murder and the proof necessary to find defendant guilty under an accountability theory.   Moreover, in closing argument defense counsel carefully argued each and every element of the offense of murder and accountability and explained why the defense believed the prosecution failed to satisfy its burden of proof with respect to this offense.

At one point defense counsel stated:

"His presence, even with knowledge that a crime was going to occur is not enough to hold him guilty under the theory of accountability.  It is not enough to make him guilty of first degree murder.  He has to intend to help.  He has to intend to do one of these things, and for you to find him guilty, you have to be convinced beyond a reasonable doubt that he had that intention."

We find that the instructions given by the trial court in this case accurately conveyed to the jury the correct principles of law applicable to the evidence in support of defendant's theory and allowed the jury to arrive at a proper conclusion based upon the law and the evidence.  See 
Peebles
, 125 Ill. App. 3d at 217; 
Thomas
, 175 Ill. App. 3d at 529.  As such, we find that the jury was aware from the instructions given that a defendant's "mere presence" at or during Patterson's murder was not sufficient to convict him of murder under an accountability theory.  See 
Thomas
, 175 Ill. App. 3d at 529.  As a result we find the trial court did not abuse its discretion by rejecting the proffered non-IPI instruction on mere presence.

Defendant's third and final claim on appeal is that the trial court abused its discretion when it sentenced defendant to a prison term of thirty years.  Defendant argues this court can find an abuse of discretion for one or both of the following reasons.  First, defendant argues that a prison term of thirty years is disparate because the more culpable co-defendant was the person who sought out and shot Patterson and yet the co-defendant received only a twenty year sentence.  Second, defendant argues that the trial court penalized him for taking his case to trial by imposing a thirty year prison term.  

First, we address defendant's claim that his sentence was unfairly disproportionate to the sentence of the co-defendant.  The sentencing of a defendant is a matter which rests within the sound discretion of the trial court, and therefore, if within the statutory limits, a sentence will not be disturbed on appeal unless the trial judge abused that discretion.  
People v. Banks
, 241 Ill. App. 3d 966, 981, 609 N.E.2d 864 (1993).  An abuse of discretion remains the logical standard of review since the trial judge is in a better position to decide the severity of the punishment after seeing the evidence and viewing the defendant.  
Banks
, 241 Ill. App. 3d at 981.  Generally, similarly situated defendants should not receive grossly disparate sentences, however, a mere disparity of sentences is not in and of itself a violation of fundamental fairness.  
People v. Caballero
, 179 Ill. 2d 205, 216, 688 N.E.2d 658 (1997); 
People v. Rivera
, 262 Ill. App. 3d 16, 28 634 N.E.2d 347 (1994).

Although defendant received a prison term of thirty years, we do not find this sentence to be grossly disparate to the sentence of the co-defendant who received a prison term of twenty years in exchange for his plea of guilty.  It is well established that "'[a] sentence entered after a guilty plea does not provide a valid basis of comparison to a sentence imposed after a trial.'" 
Rivera
, 262 Ill. App. 3d at 28; 
Caballero
, 179 Ill. 2d at 217-18.

Prior to defendant's sentencing, Judge Coughlan stated that she had spoken to both the prosecution and the defense and that neither side had objected to her reviewing the trial transcripts and imposing a sentence since the judge who had presided over defendant's trial had passed away.  During defendant's sentencing hearing the trial court found defendant to be unremorseful and found Patterson's murder to be a "***vicious, brutal murder of a young boy on a bike."  Thus, "a minimum penitentiary sentence in view of all these circumstance [sic] would be a miscarriage of justice."  After this same sentencing hearing, defendant asked the trial court to reconsider its sentence.  At this hearing the judge said:

"I did not extend the maximum sentence that I could have extended under the law, nor did I extend the minimum sentence.  I extended a sentence that I thought was fair based on the very aggravating facts of this gang violence case.  I considered the fact that this defendant did testify, that he testified untruthfully on the stand, in my opinion, and in arriving at a reasonable and an appropriate sentence I also considered the fact that in the defendant's own word that he thought the victims were Black Stone's, rival gang members, and he didn't think it was right for them to be in his neighborhood.  Well, he was wrong.  And it was a serious, violent case and sentence was imposed for those reasons and not because this defendant took a jury trial."

Under 730 ILCS 5/5-8-1(a)(1) (West 1996), a defendant convicted of murder shall be sentenced to a term no less than twenty years and no more than sixty years.  In this case, defendant received a sentence ten years above the minimum.  Clearly, such a term is within the statutory guidelines and thus, it cannot be said such a term was excessive or unjust.  Nor can it be said such a sentence was unfairly disparate when it is considered that the co-defendant in this case pled guilty from the outset of this proceeding.  Dispositional concessions are properly granted to defendants who plead guilty since the public interest in the effective administration of criminal justice is served.  
Caballero
, 179 Ill. 2d at 217-18; see 
People v. Milton
, 182 Ill. App. 3d 1082, 1094-95, 538 N.E.2d 1227 (1989) (holding "[i]t is proper for a trial court to grant leniency in sentencing a defendant who by his plea ensured prompt and certain application of correctional measures to him, acknowledged his guilt [and] showed a willingness to assume responsibility for his conduct").  Therefore, we find defendant's sentence not disparate from the co-defendant.

Defendant also argues that he should receive no more than a twenty year prison term based upon the pretrial 402 conference held before Judge Morgan.  According to defendant, Judge Morgan told him that based upon the facts before her, she would not impose a sentence greater than twenty years in exchange for his plea of guilty.  Defendant also states that he was told that if he chose to go trial he would not be penalized at the time of sentencing if he were found guilty.  Because defendant was in fact found guilty and sentenced to a thirty year prison term by Judge Coughlan, defendant alleges that he was penalized by going to trial.       

The fact that a heavier sentence was imposed after a lesser one was offered prior to trial does not necessarily justify an inference that the higher sentence was imposed as punishment.  
People v. Gornick
, 107 Ill. App. 3d 505, 513, 437 N.E.2d 892 (1982) (finding defendant was not punished for taking his case to trial where defendant was offered a lesser sentence prior to trial in a 402 conference but received a greater sentence after trial).  Here, the record fails to support any of defendant's allegations except that a 402 conference took place.  More importantly however, even if we accepted the defendant's claim as true and find that Judge Morgan made a pretrial offer to impose a sentence of twenty years, we would nevertheless find that such a offer was premised on the condition that defendant would first plead guilty to the offense of murder.  As we have previously discussed, it is proper to grant dispositional concessions to a defendant who pleads guilty and furthers the public interest by facilitating the effective administration of justice.  
Caballero
, 179 Ill. 2d at 1094-95.  Moreover, the trial court articulated specific reasons why it felt a thirty year term was warranted for defendant's conduct at the sentencing hearing.  Therefore, given the recognized dispensations a defendant may receive by pleading guilty, we do not find that defendant was necessarily punished by taking his case to trial and receiving a thirty year term, when that term was significantly less than the potential term defendant could have received under 730 ILCS 5/5-8-1(a)(1) (West 1996). 

Additionally, we note that discussions occurring in a pretrial 402 conference about a potential sentence do not raise the same considerations a negotiated plea does.  See  
People v. Evans
, 174 Ill. 2d 320, 325, 673 N.E.2d 244 (1996) (finding that Rule 402 requires  "among other things, that plea agreements be placed on the record, that certain admonitions be given to the defendant, and that the court determine whether the plea is voluntarily and knowingly made and whether a factual basis exists for the plea)
.  Generally, negotiated pleas are governed by the principles behind contract law.  A common scenario in which these principles apply is where a defendant pleads guilty to certain charges in exchange for the prosecutor's agreement to dismiss others and then recommend a specific sentence.  
Evans
, 174 Ill. 2d at 326-27.  

Obviously, a defendant's consideration is his plea of guilty while the prosecution's is its dismissal of certain charges or a recommendation for specific sentence or both.  Here, we have neither.  Rather, the record reflects only that the trial court may have made a representation that if defendant were to plead guilty it would not sentence him beyond the statutory minimum barring the existence of any aggravating factors.   Nevertheless, it appears that defendant is arguing there was an agreement that he would receive no more than a twenty year prison term for pleading guilty and no more if he took his case to trial and were found guilty.  In other words "heads I win, tails you lose."  See 
Evans
, 174 Ill. 2d at 328.  The fact that defendant received a prison term of thirty years following a jury trial is not evidence that he was penalized for taking his case to trial when he was previously offered a twenty year term in a pretrial 402 conference.  Rather, we believe that it represents no more than the well established sentencing dispensations sometimes given to those defendants who choose to plead guilty from the outset of their proceedings.  
Caballero
, 179 Ill. 2d at 218.  Thus, there was no agreement and no basis to find Judge Coughlan should be bound by the alleged representations made in Judge Morgan's pretrial 402 conference.  

In light of the foregoing analysis, we affirm the holding of the trial court.

Affirmed.

COUSINS, P.J., and GORDON, J., concur.