COMMONWEALTH vs. NORMAN L. LONGVAL.

Essex. March 6, 1979. — June 12, 1979.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & ABRAMS, JJ.

*Practice, Criminal,* Sentence.

Certain comments made by a trial judge to the defendant's counsel in an unrecorded lobby conference during the trial, which suggested that, in light of the evidence presented by the Commonwealth, counsel would be well advised to consider plea bargaining and which directed the attention of defense counsel to substantial sentences he had imposed in other unrelated cases, did not constitute an unconstitutional threat of punishment for the defendant's exercise of his right to trial by jury. [251-252]

A judge at a criminal trial did not err in sentencing a defendant convicted after trial of armed robbery, assault by means of a dangerous weapon, and unlawfully carrying a sawed-off shotgun, to consecutive State prison terms of thirty-two to forty years and eight to ten years, even though he had sentenced a codefendant who pleaded guilty to the same indictments to three years in a house of correction and an additional term of probation. [252]

INDICTMENTS found and returned in the Superior Court on September 9, 1975.

The cases were tried before *Donahue, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*Beth H. Saltzman* for the defendant.

*Patrick J. Riley,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J. The single issue presented by the defendant is whether State prison sentences imposed on him totaling forty to fifty years, and later reduced by the Appellate Division of the Superior Court to thirty to forty years, were grossly and unlawfully disparate from a codefendant's sentences to three years in a house of correction and an additional term of probation.

Norman L. Longval, Richard T. Ellard, and Kenneth M. Golden were indicted jointly on two charges of armed robbery, assault by means of a dangerous weapon, unlawfully carrying a sawed-off shotgun, and using a motor vehicle without authority. All of the defendants appeared before a judge of the Superior Court on November 6, 1975.

Ellard pled guilty to all indictments and was sentenced as follows: two years in a house of correction on the assault by means of a dangerous weapon charge; one year in a house of correction on the motor vehicle charge, to be served from and after the first sentence imposed; and three years probation on the armed robbery charge, to run from and after the second sentence imposed. The other indictments were filed.

Longval and Golden had a trial by jury from November 6 until November 10, 1975, before the same judge who sentenced Ellard. Longval was convicted on all indictments and was sentenced as follows: concurrent terms of thirty-two years to forty years at Massachusetts Correctional Institution, Walpole, on the armed robbery charges, and concurrent terms of eight to ten years on the assault and gun carrying charges, to run from and after the sentences for armed robbery. The motor vehicle charge was filed. Golden was acquitted on all indictments.

As a result of a sentence appeal, Longval's sentences were reduced by the Appellate Division as follows: concurrent terms of thirty to forty years on the armed robbery indictments, and lesser terms as to the other sentences, all to be served concurrently with the sentences for armed robbery.

On his appeal pursuant to G. L. c. 278, §§ 33A-33G, Longval assigned one error dealing with the disparity between his sentences and those given Ellard. Subsequently, Longval filed a petition for a writ of error in this court attacking his sentences and referring to matters outside the record on appeal. A single justice of this court declined to issue the writ, but instead ordered the record

on appeal to be expanded to include the transcript of Ellard's plea and sentencing and, by report of a special master, to include the substance of an unrecorded lobby conference between the sentencing judge and the counsel in the case. After a hearing, the special master found that in an unrecorded conference during the presentation of the Commonwealth's case, the judge said to Longval's counsel: "[T]he evidence in this case as it is coming in is very serious — robbery of a drug store, taking [i.e. theft of] drugs, use of a shot gun. I am wondering if you and the Commonwealth have had any discussion regarding a plea [of guilty]. I strongly suggest that you ask your client to consider a plea, because, if the jury returns a verdict of guilty, I might be disposed to impose a substantial prison sentence. You know that I am capable of doing that because you know of the sentences in a previous trial." The master found that the judge was referring to "very substantial sentences" imposed that month on three codefendants after jury verdicts of guilty.

At the hearing during which Ellard pleaded guilty, the prosecutor read a police report of the incident, which contained a statement given by one Arthur M. Kelley. According to that statement, Kelley and one Michael Coraine were working in a drugstore in Swampscott when a man came behind the prescription counter "jabbing" a short-barreled gun at them and saying, "I want narcotics, the morphine, all the Class A's." As Kelley filled bags with narcotics from the medicine cabinet, the man told Coraine to lie down and took a five-dollar bill from Coraine's wallet. Another man, Ellard, came up with a knife and told the first man to hurry up. The first man directed Coraine to open the cash register and told Kelley to lie still on the floor, saying, "If you move, I'll blow your brains out." Before leaving in a Chevrolet automobile, the men further threatened them, saying, "Don't move or we'll blow your brains out. Stay put for five minutes."

The police report further indicated that in response to a radio report, officers in a police vehicle chased the Chev-

rolet. A person on the passenger's side shot at them but missed.

During examination by the judge, Ellard said that he had suffered blackouts from drinking and had an alcohol problem but was not presently addicted to alcohol. Although admitting involvement in the crimes, he said he was drunk at the time, did not use the shotgun, and did not threaten anyone with the knife he carried.

After accepting Ellard's pleas, the judge heard the prosecutor's recommendation: a three- to five-year State prison sentence on the two armed robbery indictments to be served at a house of correction. Observing to defense counsel that "we had an informal conference on this matter this morning," the judge said, "I have gone through the probation record, and I'm aware that this defendant has not been in any real serious trouble prior to this event of June of this year. And I think his problem is primarily alcohol." Defense counsel added, "[F]or the last eleven years he has had a problem, and as a result has lost jobs, his family, his wife," and asked that the assistant district attorney's recommendation be adopted. The judge, in imposing sentences totaling three years in the Billerica house of correction and a consecutive term of three years' probation, noted that alcohol treatment was available at Billerica. He also imposed as a special term of probation that Ellard "seek and sustain alcoholic treatment."

At Longval and Golden's trial, the Commonwealth called seven witnesses. Kelley and Coraine testified in a manner generally consistent with Kelley's statement to the police. They identified Longval as the man who carried the shotgun while in the pharmacy. Neither witness could identify Golden or say whether he was in the getaway car.

Police witnesses identified Longval as the driver of the green Chevrolet they chased and Golden as the front seat passenger who shot at them while the car was taking a curve at a high speed, about 150 feet in front of their cruiser. They described the arrests of Longval and Golden

at separate locations in Marblehead. Golden denied participation in the crimes and said he had been jogging.

After the Commonwealth rested, Longval testified. Longval stated that he went to the Bickford Pharmacy with Ellard in a car he previously had stolen, and that no third person accompanied them. Inside the pharmacy, Longval carried the gun, which he had obtained from a friend of Ellard. He further testified that during the chase, he drove and Ellard used the gun to shoot at the police; that Golden was not present and did not participate in the crimes; and that he first saw him that day at the Swampscott police station. Golden did not testify.

After the jury convicted him on all indictments, Longval was sentenced. The prosecutor recommended a State prison sentence of thirty-two to forty years for armed robbery and a consecutive eight- to ten-year sentence for assault by means of a dangerous weapon. He made no recommendation on the remaining indictments.

Defense counsel advised the judge that Longval was thirty-six years old. Stating that his client had testified "in an effort to see to it that justice was done in a case of a fellow he felt was wrongfully accused," counsel suggested that "the Court should take into consideration that factor in his favor." Counsel acknowledged that Longval was no stranger to the courts, had a previous record for larcencies, and had served a five- to eight-year sentence at the Correctional Institution at Walpole for armed robbery. However, he pointed out that the record reflected an involvement with narcotics as early as 1960 and, except for the armed robbery conviction, a "rather obvious lack of violence."[1]

Defense counsel suggested that the crimes were serious, but that a sentence of fifteen to thirty years would be adequate punishment. He made no mention of the sentences given Ellard.

---

[1] However, the judge had learned that Longval had recently escaped from the Salem house of correction and that a firearm had been involved.

Essentially adopting the prosecutor's recommendation, the judge sentenced Longval to State prison terms totaling forty to fifty years. He gave no reasons for the sentences imposed. Subsequently, after a hearing, the Appellate Division of the Superior Court reduced Longval's sentences. The revised sentences totaled thirty to forty years at Walpole.[2]

We turn first to the defendant's assertions based on constitutional considerations. The defendant, we think correctly, does not rely on the constitutional prohibitions against cruel and unusual punishment, as contained in the Eighth Amendment to the United States Constitution and art. 26 of the Massachusetts Declaration of Rights. See *Commonwealth* v. *O'Neal*, 369 Mass. 242, 246-250 (1975) (Tauro, C.J., concurring), and cases cited. These constitutional principles do not reach this case. The applicable statute, G. L. c. 265, § 17, establishes the extreme seriousness of the crime of armed robbery, in its provision that sentence may be imposed of any term of years up to life imprisonment.

Rather, the defendant argues that to the extent a trial judge punishes a defendant for having a trial by jury, he commits constitutional error, citing *United States* v. *Stockwell*, 472 F.2d 1186, 1187 (9th Cir.), cert. denied, 411 U.S. 948 (1973), or at least abuses his discretion, citing *United States* v. *Wiley*, 278 F.2d 500, 503 (7th Cir. 1960). We agree with the defendant's premise. However, it is not applicable here, on the facts of this case. We do not read the words of the judge, quoted *supra*, as supporting an inference of such punishment or threat of punishment. His words directed the attention of defense counsel to sentences he had imposed in other unrelated cases; they commented on the serious nature of the offense as shown in the evidence at the trial; and they advised the defend-

---

[2] In so doing the Appellate Division corrected one of the lesser sentences which exceeded the statutory limit but which was a concurrent sentence and did not affect the total time to be served.

ant, through his counsel, not to forgo any advantage that might accrue to the defendant by means of plea bargaining and a resulting recommendation to the court by the prosecutor as to the sentence.

There was nothing inappropriate in these comments by the judge. To read into the words the meaning now urged by the defendant is to strain their plain language. Even if we were to accept the premise that there is ambiguity in the phrasing, we would decline to reach as far as the defendant does to force an inference of an unlawful meaning in the words.

Beyond the constitutional arguments, the defendant urges that this court should correct "legal error" in the sentence imposed. It is true that error of law which occurs in sentencing is an appropriate matter for appellate relief. See *Commonwealth* v. *Sitko*, 372 Mass. 305, 313-314 (1977); *Commonwealth* v. *LeBlanc*, 370 Mass. 217, 222-225 (1976); *Commonwealth* v. *Franks*, 369 Mass. 608, 609 (1976). Yet, in this case there was no error of law; the sentences imposed were within the broad discretion afforded to the judge in the statutes. However, the defendant argues that there is such great disparity between the punishment of Ellard and the defendant as to require a remedy.

The defendant concedes that his premise is unprecedented in this jurisdiction. The Appellate Division of the Superior Court is the appropriate forum for relief against unfair disparity, and in this case the Appellate Division has already afforded a large measure of relief in reducing the sentence by ten years. However, the defendant argues that special principles apply to the sentencing of coparticipants in the same crime, and that equal participants should be given comparable sentences, at least where they have similar backgrounds, citing *United States* v. *Williams*, 499 F.2d 52, 56 (1st Cir. 1974), and *Burleson* v. *State*, 543 P.2d 1195, 1201 (Alaska 1975).

We agree that this court should review sentences for errors of law or constitutional violation, but we do not

accept the premise that we ordinarily have jurisdiction to review for alleged disparity. We do not say that there may never be a case in which the sentence is so severe or the demonstrated disparity so great as to amount to an abuse of discretion and, thus, present an appropriate subject for our review. See G. L. c. 211, § 3. We add that, even were we to reach the merits of this case, and consider what is urged here to be wide disparity of punishment between coparticipants, we can see ample justification for the sentences imposed. In addition to the nature of the offense, a wide variety of factors can be taken into account, such as the defendant's character, background and prior record. *Commonwealth* v. *Celeste*, 358 Mass. 307, 310 (1970). *Letters* v. *Commonwealth*, 346 Mass. 403, 405 (1963). While the defendant concedes that he apparently conceived and led the robbery, and carried the more dangerous weapon inside the pharmacy, he argues that there was similarity between the two men in age, background, and participation in the robbery.

The Superior Court judge, and subsequently the Appellate Division, were justified in concluding that widely disparate sentences, as between Ellard and the defendant, were warranted by their widely disparate criminal records. By consent of the parties, we have examined the prior records of both men. Ellard's record may fairly be said to include a number of prior offenses, but all of minor or trivial nature, with none involving violence or the likelihood of violence until he was involved in the instant armed robbery. The defendant, on the other hand, has a record of almost twenty years of repeated, serious offenses, most involving stealing in some form, and some involving breaking and entering. He has served prison terms on a number of occasions. Perhaps of overriding importance is the fact that the defendant served a prior five- to eight-year sentence for armed robbery. In all, the judge could conclude, and obviously did, that the defendant was a confirmed and dangerous offender.[3]

*Judgments affirmed.*

---

[3] We do not consider the arguments that another judge might not

have sentenced the defendant so severely, or that the judge should have made written findings as to the sentences imposed, especially since a coparticipant was sentenced. These questions concern the greater issue as to whether the sentencing discretion of judges should be limited, and this is a matter now under legislative consideration.