550 S.E.2d 915

**The STATE of South Carolina, Respondent,**

v.

**Eric R. BROUWER, Appellant.**

**No. 3373.**

Court of Appeals of South Carolina.

Heard June 4, 2001.

Decided July 23, 2001.

376

Rodman C. Tullis, of Spartanburg, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Robert E. Bogan, Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; Solicitor Holman C. Gossett, of Spartanburg, for respondent.

SHULER, Judge:

A jury convicted Eric Brouwer of disseminating obscene material and the trial court sentenced him to four years imprisonment, suspended on service of six months, and three years probation. Brouwer appeals, arguing the court erred in failing to grant a directed verdict, in refusing to admit comparable materials into evidence, and in sentencing him more harshly than a co-defendant who pled guilty. We affirm in part, reverse in part, and remand.

## FACTS/PROCEDURAL HISTORY

In early February 1999, the Cherokee County Metro Narcotics Unit began an undercover investigation of Bedtyme Stories, an adult business, after receiving complaints from local citizens. Officer David Parker visited the store on several occasions, posing as a customer and inspecting videos potentially in violation of the state's obscenity laws. On February 18 Parker rented a videotape entitled *AGB2* (ANAL GANG BANGERS 2) from Wendy Kaplan, a sales clerk. Parker and fellow Officer Christy White returned and purchased a copy of the movie on February 22 from another clerk, Eric Brouwer.

On the day of sale, Parker informed Brouwer he wanted to buy *AGB2* and Brouwer accessed Parker's account on the store computer. When Brouwer asked Parker if he was buying the movie because he liked it, Parker replied he was starting a "little library." Brouwer explained he thought Parker might have been under the mistaken impression he was required to buy the movie because he had rented it. Brouwer then scanned the tape, placed it in a bag, and told Parker the price. Parker paid and signed a receipt certifying he was at least twenty-one years old, and Brouwer handed him the bag.

A Cherokee County grand jury indicted both Brouwer and Kaplan for disseminating obscene material. Scheduled for a joint trial, Kaplan ultimately pled guilty and the trial court sentenced her to two years plus a $5,000 fine, provided that upon payment of a fine of $750 plus costs the balance of the sentence would be suspended. The court also placed Kaplan on probation for two years.

Brouwer proceeded to trial and the jury returned a verdict of guilty. The trial court sentenced him to four years imprisonment, balance suspended upon service of six months, and three years probation. In addition, the court imposed special conditions requiring Brouwer to "participate in such counseling as probation deems appropriate, which should include something about sensitivity counseling" and human relationships. This appeal followed.

## LAW/ANALYSIS

### I. Directed Verdict

Brouwer first argues the trial court erred in refusing his motion for a directed verdict because the State failed to prove he "knowingly" disseminated obscene material. We disagree.

In considering a directed verdict motion, the trial court is concerned with the existence or non-existence of evidence, not its weight. *State v. Kelsey*, 331 S.C. 50, 502 S.E.2d 63 (1998). On appeal of a criminal case, the reviewing court considers the evidence in the light most favorable to the State. *State v. Fennell*, 340 S.C. 266, 531 S.E.2d 512 (2000). If any direct or substantial circumstantial evidence exists which reasonably tends to prove the defendant's guilt, or from which his guilt may be fairly and logically deduced, this Court must find the trial court properly submitted the case to the jury. *State v. Pinckney*, 339 S.C. 346, 529 S.E.2d 526 (2000).

The indictment charged Brouwer pursuant to S.C.Code Ann. § 16–15–305(A) (Supp.2000), which prohibits a person from "knowingly" disseminating obscene material.[1] The statute defines "knowingly" as "having general knowledge of the content of the subject material or performance, or failing [to have such knowledge] after reasonable opportunity to exercise reasonable inspection which would have disclosed the character of the material or performance." § 16–15–305(C)(5).

---

1. Material may be "obscene" if it depicts specifically defined sexual conduct, including *inter alia:* actual or simulated vaginal, anal, or oral intercourse; masturbation; lewd exhibition of male or female genitals; touching, caressing, or fondling of covered or exposed genital or anal regions for actual or apparent sexual stimulation or gratification. *See* S.C.Code Ann. § 16–15–305(C)(1) (Supp.2000).

The record reflects Bedtyme Stories was located in a building with a "yellow awning" identifying the business as an "adult store." It also reveals Brouwer asked Parker to show an I.D. before entering the establishment, and made a copy of his driver's license because he appeared to be under the age of thirty. In addition, when Parker bought *AGB2*, Brouwer required him to sign a receipt attesting that he was at least twenty-one years old. This evidence suggests Brouwer possessed at least some general knowledge of the adult nature of the store's merchandise.

More important, during a transaction lasting several minutes, Brouwer handled the movie for a minimum of fifteen to twenty seconds, scanning it with an electronic device and placing it in a bag. The tape, in its original packaging with the full title appearing on the front and back, prominently displays "AGB2" in large print (with the words "ANAL GANG BANGERS 2" in smaller print underneath) on the top, bottom, and sides of the box. The back of the box also features three sexually explicit photographs, two of which depict a female engaged in simultaneous sexual activity with two men, along with a written summary of the movie's contents.

In our view, Brouwer's personal exposure to the video, even for a relatively short period of time, coupled with the obviously adult nature of the Bedtyme Stories business, is sufficient evidence tending to prove he knew or should have known the general character of the tape's content. *See Commonwealth v. Dane Entm't Servs., Inc.*, 23 Mass.App.Ct. 1017, 505 N.E.2d 892, 893 (1987) (holding evidence, including fact that film was billed as "X–Rated" on directory in theater lobby opposite ticket counter along with other adult movies, that a sign nearby stated no minors were allowed, and that the word "ADULT" appeared twice in boldface type on ticket face, sufficiently warranted conclusion by a rational trier of fact that the defendant "had a general awareness of the [obscene] character of the film"); *compare State v. Bean*, 327 S.C. 589, 490 S.E.2d 16 (1997) (finding the State failed to prove nightclub owners knowingly permitted obscene dancing on their premises where no evidence indicated owners, who were not present when police videotaped the allegedly lewd conduct, knew or had reason to know nude dancers were bending over and exposing themselves to customers); *State v. Pendergrass,*

13 S.W.3d 389, 394–95 (Tenn.Crim.App.1999) (stating evidence video store proprietor stocked items of a sexual nature and advertised such on his building's signs was insufficient to establish he "knowingly distributed obscenity," where the prosecution failed to establish the degree of his involvement in the business and presented no evidence he was on the premises "*or engaged in activities such as assisting customers with purchases,* stocking shelves, receiving merchandise, or ordering merchandise") (emphasis added). The trial court, therefore, did not err in sending the case to the jury.

## II. Exclusion of Comparable Materials

Brouwer further contends the trial court erred in refusing to admit material

comparable to *AGB2* as evidence of the requisite community standard. We find no error.

■ The determination of whether certain materials are "obscene" lies within the province of the jury. For purposes of our dissemination statute, material is deemed obscene if:

(1) to the average person applying contemporary community standards, the material depicts or describes in a patently offensive way sexual conduct specifically defined by subsection (C) of this section;

(2) the average person applying contemporary community standards relating to the depiction or description of sexual conduct would find that the material taken as a whole appeals to the prurient interest in sex;

(3) to a reasonable person, the material taken as a whole lacks serious literary, artistic, political, or scientific value; and

(4) the material as used is not otherwise protected or privileged under the Constitutions of the United States or of this State.

§ 16–15–305(B). The "community standards" to be employed by the jury in "determining prurient appeal and patent offensiveness are the standards of the area from which the jury is drawn." *Id.* at (E).

Before trial, Brouwer requested a preliminary ruling on the admissibility of materials comparable to *AGB2* to show the

video fell within the ambit of Cherokee County's contemporary community standards. The trial court, finding the mere availability of similar materials in the community did not demonstrate community acceptance, refused to admit the exhibits but permitted Brouwer to proffer the evidence for appeal.[2]

■ The admissibility of allegedly comparable materials in an obscenity trial is an issue of first impression in this state. Although decisions from other jurisdictions are not entirely uniform, the vast majority of state and federal courts have concluded such evidence is admissible subject to the predicate test for admissibility found in *Womack v. United States*, 294 F.2d 204 (D.C.Cir.1961), *cert. denied*, 365 U.S. 859, 81 S.Ct. 826, 5 L.Ed.2d 822 (1961). We agree evidence of comparison material generally is admissible to assist a jury in determining the prevailing community standards it must employ in evaluating allegedly obscene material. *See Hamling v. United States*, 418 U.S. 87, 125, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) ("[J]ust as a defendant in any other prosecution, [a defendant in an obscenity case] is entitled to an opportunity to adduce relevant, competent evidence bearing on the issues to be tried."); *Smith v. California*, 361 U.S. 147, 165, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959) (Frankfurter, J., concurring) ("[I]n determining what constitutes obscenity, it surely must be deemed rational, and therefore relevant to the issue of obscenity, to allow light to be shed on what those 'contemporary community standards' are.") (internal citation omitted); *Flynt v. State*, 153 Ga.App. 232, 264 S.E.2d 669, 674 (1980) ("[W]e are persuaded that evidence which satisfies the *Womack* test is relevant, probative evidence which should be admitted in an obscenity trial for the consideration of the trier of fact."). As our sister court stated in *Flynt v. State:*

> The rationale behind the admission of "comparative" evidence is to allow the defendant in an obscenity case the opportunity to attempt to persuade the trier of fact that the challenged material does not exceed contemporary commu-

---

**2.** The proferred items, all sexually explicit, included a compilation videotape recorded from satellite broadcasts via DirecTV; video clips downloaded from the internet onto compact disc; and two videos, *Young Tails* and *The Squirt is on the Hunt,* whose rental or purchase from Bedtyme Stories by undercover officers never resulted in any arrest or prosecution.

nity standards, as represented by the comparable material and against which the challenged material is judged. The comparative material is tangible evidence of contemporary community standards.

*Flynt*, 264 S.E.2d at 674.

Such evidence, however, should not be admitted in the absence of a proper foundation ensuring its probative nature. *See United States v. Pinkus*, 579 F.2d 1174, 1175 (9th Cir. 1978) ("[T]here are foundational requirements for admissibility of such evidence that have evolved as logical indicia of its materiality and relevance."); *United States v. Womack*, 509 F.2d 368, 377–78 (D.C.Cir.1972) ("*Womack* merely requires an adequate foundation to be laid for the introduction of comparison evidence. . . . The burden is on the defendant and in the absence of such a showing, the evidence must be excluded as lacking sufficient probative value.") (footnotes omitted); *State v. Wages*, 483 N.W.2d 325, 327 (Iowa 1992) ("[*Womack*] foundational requirements . . . are merely logical prerequisites under traditional concepts of materiality and relevancy."); *State v. J–R Distrib., Inc.*, 82 Wash.2d 584, 512 P.2d 1049, 1083 (1973) (en banc) ("To be relevant, the proffered [comparison] evidence must have something more than minimal probative value. It must have some actual probative weight upon the issue of fact under consideration."); *see also* Rule 401, SCRE (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); Rule 402, SCRE ("All relevant evidence is admissible, except as otherwise provided. . . .").

■ The "*Womack* test," as it has come to be known, requires a proponent of comparison materials to lay a foundation prior to introducing them into evidence by showing: (1) the materials being compared are in fact "similar," and (2) the comparison materials enjoy a "reasonable degree of community acceptance." *Womack*, 294 F.2d at 206. In determining "similarity," the trial court must review the proffered material to see if it reasonably resembles the material which the State alleges to be obscene. *See Flynt*, 264 S.E.2d at 676 (stating the "similarity" of comparable material is governed by its "reasonable resemblance" to the material at issue) (quoting

*Pinkus,* 579 F.2d at 1175). Here, the State stipulated that the items Brouwer sought to introduce were sufficiently similar to *AGB2* to meet the first prong of the *Womack* test.

■ The trial court also took judicial notice "that materials that may be very similar to [*AGB2* ] are available to anybody." However, "[m]ere availability of similar material by itself means nothing more than that other persons are engaged in similar activities." *United States v. Manarite,* 448 F.2d 583, 593 (2d Cir.1971); *see Hamling,* 418 U.S. at 125–26, 94 S.Ct. 2887 ("The availability of similar materials on the newsstands of the community does not automatically make them admissible as tending to prove the nonobscenity of the materials which the defendant is charged with circulating."). Consequently, evidence of "mere availability of similar materials is not by itself sufficiently probative of community standards to be admissible in the absence of proof that the material enjoys a reasonable degree of community acceptance." *Manarite,* 448 F.2d at 593. As a preliminary matter, therefore, the trial court must distinguish between a defendant's showing of "mere availability" and that of "a reasonable degree of community acceptance." *Womack,* 509 F.2d at 379–80; *see State v. Johnson,* 104 N.M. 430, 722 P.2d 681, 682 (Ct.App.1986) ("The fact that sexually explicit material was obtained in a particular locality does not establish a reasonable degree of community acceptance."); *Flynt,* 264 S.E.2d at 673 ("[Availability] is no indication that the average person, applying contemporary community standards, would not consider the [ ] magazines [in a particular case] to be obscene.").

■ As noted in *Womack,* "a determination of the precise point at which a publication is so widely sold and is so generally available in the community as to warrant a finding of community acceptance is difficult to fix with assurance." *Womack,* 509 F.2d at 379. Clearly, it is insufficient to offer comparables alone, as such material is not relevant in the absence of additional evidence tending to prove its "acceptance" in the community.[3] *See id.* ("[I]t is not difficult to identify that which clearly does not even approach an appreciable level of community acceptance and to exclude that materi-

---

3. Applying the *Womack* test, numerous other states have come to the same conclusion. *See, e.g., Baird v. State,* 12 Ark.App. 71, 671 S.W.2d 191 (1984); *Flynt v. State,* 153 Ga.App. 232, 264 S.E.2d 669 (1980);

al as possessing so little probative value as to serve only to impede the resolution of the issues."); *State v. Johnson,* 104 N.M. 430, 722 P.2d 681, 682–83 (Ct.App.1986) (affirming trial court's refusal to admit for comparison an adult magazine purchased from a bookstore near the defendant's establishment, where the defendant offered no evidence concerning the extent of the publication's local distribution; the court held defendant's evidentiary proffer "went to 'mere availability' rather than to 'a reasonable degree of community acceptance' "). Thus, courts have held the *Womack* foundation requirement may be met by supplementing the comparable material with expert testimony,[4] sales figures,[5] and possibly public opinion polls regarding the precise material in question.[6]

In the instant case, Brouwer attempted to introduce material similar to *AGB2,* which he claimed was widely available in Cherokee County via the internet and DirecTV. While we agree such evidence *could be admissible* in an obscenity prosecution, here Brouwer tendered no proof the items offered enjoyed a reasonable degree of acceptance in the local

---

*State v. Wages,* 483 N.W.2d 325 (Iowa 1992); *State v. Carlson,* 291 Minn. 368, 192 N.W.2d 421 (1971); *City of Sioux Falls v. Mini–Kota Art Theatres, Inc.,* 247 N.W.2d 676 (S.D.1976); *State v. Rice,* 790 S.W.2d 296 (Tenn.Ct.App.1989); *State v. J–R Distrib., Inc.,* 82 Wash.2d 584, 512 P.2d 1049 (1973).

4. *See United States v. Womack,* 509 F.2d 368 (D.C.Cir.1972); *Pierce v. State,* 292 Ala. 473, 296 So.2d 218 (1974); *Flynt v. State,* 153 Ga.App. 232, 264 S.E.2d 669 (1980); *City of Sioux Falls v. Mini–Kota Art Theatres, Inc.,* 247 N.W.2d 676 (S.D.1976).

5. *See Pierce v. State,* 292 Ala. 473, 296 So.2d 218 (1974); *Flynt v. State,* 153 Ga.App. 232, 264 S.E.2d 669 (1980). A proponent must be careful, however, to offer appropriate *sales* figures as opposed to *distribution.* *See Flynt,* 264 S.E.2d at 676 (rejecting testimony from chief financial officer of magazine distributor regarding distribution figures for 324 county retail stores because such figures indicated only the number of magazines available at newsstands and other outlets and nothing more).

6. *See Flynt v. State,* 153 Ga.App. 232, 264 S.E.2d 669 (1980). Although *Flynt* affirmed the trial court's refusal to admit the results of a public opinion survey, the court indicated this was because the poll "merely inquired as to general opinions concerning the depiction of 'nudity and sex,' " and the results, therefore, "were not relevant to the issue" of whether the particular magazines at issue were obscene. *Id.* at 672.

community, such as expert testimony or cable, internet or satellite television provider subscription and sales records.[7] Accordingly, because Brouwer failed to lay a proper foundation establishing the relevance of the proffered materials, the trial court did not err in excluding the evidence.[8] *See Pinkus,* 579 F.2d at 1175 ("Whether a foundational showing is sufficient to meet the second prong of the [*Womack*] test [in the first instance] is a matter for the trial judge to determine as he has 'wide discretion whether to permit the introduction' of comparable materials.") (quoting *Womack,* 509 F.2d at 378); *see also State v. Fulton,* 333 S.C. 359, 509 S.E.2d 819 (Ct.App. 1998) (an evidentiary ruling of the trial court will be reversed only upon a demonstrated abuse of discretion resulting in prejudice).

## III. Sentence

Finally, Brouwer claims the trial court, in passing sentence, improperly considered the fact that he exercised his right to a jury trial. We agree.

---

7. Although Brouwer did proffer a compilation of some thirty photocopied register receipts reflecting purchases and rentals of sexually-oriented items by Bedtyme Stories' customers, such "self-selected" evidence falls far short of the requisite showing to establish community acceptance. *See State v. J-R Distrib., Inc.,* 82 Wash.2d 584, 512 P.2d 1049, 1083 (1973) (en banc) (finding defendant theater failed to show a reasonable degree of community acceptance by proffering a police officer's testimony that a dozen or so other local theaters were exhibiting similar films; court found proposed evidence "involved such a microscopic portion" of community residents, "severely limited both as to area and numbers of people," that it "could not have been relevant to establish contemporary community standards"). Moreover, Brouwer's attorney specifically declined the trial court's offer to allow expert testimony on the matter, stating "Well, I don't know if that's necessary at this time, Your Honor. I'll move on to the next issue."

8. Brouwer also asserts other videos, "confiscated" from Bedtyme Stories and reviewed by Cherokee County law enforcement officials without subsequent prosecution, should have been admitted "as an accurate barometer of community acceptance." This contention is meritless. As the second *Womack* court noted, the "mere failure to prosecute does not begin to constitute a sufficient showing of [the *Womack* foundation requirement]." *Womack,* 509 F.2d at 380; *see also State v. Thrift,* 312 S.C. 282, 291–92, 440 S.E.2d 341, 346 (1994) ("Both the South Carolina Constitution and South Carolina case law place the unfettered discretion to prosecute solely in the prosecutor's hands.") (footnotes omitted).

After the jury returned its verdict, Brouwer, pursuant to *Davis v. State,* 336 S.C. 329, 520 S.E.2d 801 (1999), asked the court to impose a sentence comparable to that given Wendy Kaplan, his co-worker and co-defendant who pled guilty immediately before trial. Because the two were similarly situated in that both were newly hired and trained store clerks with no prior criminal record, and both were convicted of disseminating the exact same material, Brouwer argued for a proportionate sentence. The trial court declined the request, explaining that Kaplan received a more lenient sentence because she admitted guilt:

> I'm a judge that gives serious consideration for someone admitting their guilt. I think that's important. . . . I believe that's the first step towards rehabilitation. . . . [T]here is no way in rhyme or reason for us to ever give a sentence for someone pleading guilty the same sentence for a jury trial. Then we have ignored the fact that a person has admitted their guilt. . . . And . . . I will take [that] into consideration in imposing this sentence, because it is not an admission of guilt.

In *Davis,* our supreme court found an attorney rendered ineffective assistance of counsel when he failed to object to nearly identical comments by the trial court. In response to the defendant's request for a sentence comparable to two co-defendants who pled guilty, the court there stated:

> Yes, ma'am, but [Davis] didn't plead guilty. Those other two people, they pled guilty. They admitted what they had done and to me that's the first step towards rehabilitation. . . .

*Davis,* 336 S.C. at 332, 520 S.E.2d at 802. In granting Davis post-conviction relief, the supreme court held:

> In response to [Davis'] argument, the trial judge unequivocally stated that the other defendants had, in fact, pled guilty. The trial judge further expressed his preference for guilty pleas by explaining that such admissions of responsibility were the first steps toward rehabilitation. We find these statements clearly revealed that the trial judge, in

sentencing [Davis], improperly considered [his] decision to proceed with a jury trial.

*Id.* at 333, 520 S.E.2d at 803.

■ We find the trial court's comments in this instance indistinguishable from those expressly disapproved in *Davis.* Although the court herein also stated it had never, and never would, "punish someone for exercising their right to a jury trial," we believe the mere disavowal of wrongful intent cannot remove the taint inherent in the court's commentary, especially since the record fails to reflect an otherwise appropriate basis for Brouwer's disparate sentence. *See id.* at 332, 520 S.E.2d at 802 (finding trial court's sentencing rationale impermissible, despite fact that court concluded comments by stating "and when a fellow wants a trial [—] which he's entitled to as a matter of law—[ ] that's fine"). Accordingly, we reverse Brouwer's sentence and remand for resentencing. *See State v. Hazel,* 317 S.C. 368, 370, 453 S.E.2d 879, 880 (1995) (remanding case for resentencing hearing where the trial court "relied heavily on [Hazel's] exercise of his right to a jury trial" in refusing a YOA sentence by stating, "Well, it's one thing, if he'd pled guilty, I'd have considered that . . .").

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

HUFF, J., concurs.

ANDERSON, J., dissents in a separate opinion.

ANDERSON, Judge (dissenting):

I respectfully dissent as to the majority's reversal of Eric Brouwer's sentence. The majority concludes the trial court, in passing sentence, improperly considered the fact that Brouwer exercised his right to a jury trial. I disagree. I would AFFIRM Brouwer's sentence.

## I. *SENTENCING CONSIDERATIONS*

### A. Goals and Objectives of Sentencing

The goals of sentencing are to reflect the seriousness of the offense, promote respect for the law, provide appropriate punishment, deter criminal conduct, protect the public from

the defendant's criminal conduct, and provide the defendant with needed care or treatment. *See United States v. Gomez–Villa*, 59 F.3d 1199 (11th Cir.1995)(citing 18 U.S.C.A. § 3553(a)(2), the Federal Sentencing Guidelines). Punishment serves several purposes: retribution, rehabilitation, deterrence, and prevention. 24 C.J.S. *Criminal Law* § 1460 (1989). *See also Merritt v. Commonwealth*, 32 Va.App. 506, 528 S.E.2d 743 (2000)(finding sentencing decision is a quest for a sentence that best effectuates criminal justice system's goals of deterrence, incapacitation, retribution and rehabilitation). In imposing sentence, the court should consider the various goals of punishment. 24 C.J.S. *Criminal Law* § 1460.

It is the responsibility of the trial judge to determine the priority and relationship of sentencing objectives in any particular case. *Id.* The primary criterion in sentencing is good order and protection of the public and society, and all other factors must be subservient to that end. *Id.*

Retribution is an appropriate objective of the sentencing process. *Id.* In a criminal prosecution, punishment of the offender is recognized as a proper motivation for a sentencing trial judge. *State v. Fletcher*, 322 S.C. 256, 471 S.E.2d 702 (Ct.App.1996). Another legitimate interest at sentencing is the defendant's prospect for rehabilitation and restoration to a useful place in society. *State v. Tucker*, 324 S.C. 155, 478 S.E.2d 260 (1996). *See also* 24 C.J.S. *Criminal Law* § 1460 (rehabilitation is considered to be one purpose of sentencing).

Generally, deterrence, both of the accused and of others, is a legitimate objective of a sentence. 24 C.J.S. *Criminal Law* § 1460. While deterrence may have to be considered in conjunction with other sentencing objectives, deterrent purposes may sometimes be emphasized over rehabilitative ones. *Id.* Penal laws are adopted and enforced for the preservation of peace and good order of the state by making a violator suffer for his wrong to society and to serve as an example to deter others who may desire to do likewise. *Wilborn v. Saunders*, 170 Va. 153, 195 S.E. 723 (1938). Community condemnation or reaffirmation of societal norms for purposes of maintaining respect for those norms is an appropriate sentencing objective, as is development of respect for the law, and moral reinforcement. 24 C.J.S. *Criminal Law* § 1460.

At sentencing, a judge has an obligation to consider information material to punishment. *Hayden v. State*, 283 S.C. 121, 322 S.E.2d 14 (1984). *See also Commonwealth v. Longval*, 378 Mass. 246, 390 N.E.2d 1117 (1979)(when imposing a sentence, the judge can consider a wide variety of factors, such as defendant's character, background and prior record). A sentencing judge may appropriately conduct an inquiry broad in scope, largely unlimited as to either the kind of information he may consider, or the source from which it may come. *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *Hayden*, 283 S.C. at 123, 322 S.E.2d at 15; *State v. Franklin*, 267 S.C. 240, 226 S.E.2d 896 (1976). In determining a proper sentence, a defendant's history, character, and rehabilitative potential, along with the seriousness of the offense, the need to protect society, and the need for deterrence and punishment, must be equally weighed. *People v. Hernandez*, 319 Ill.App.3d 520, 253 Ill.Dec. 550, 745 N.E.2d 673 (2001).

### B. Sentence Imposed Upon a Co–Defendant

The sentence imposed upon a co-defendant for the same offense and upon others for similar offenses are among a wide variety of factors which may be considered in determining a proper punishment. *State v. Brewington*, 267 S.C. 97, 226 S.E.2d 249 (1976). There is no requirement of law that defendants charged with similar offenses be given the same punishment. *State v. Garris*, 265 N.C. 711, 144 S.E.2d 901 (1965).

### C. Guilty Pleas

The State has a legitimate interest in encouraging the entry of guilty pleas. *Corbitt v. New Jersey*, 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978); *Gajdos v. State*, 462 N.E.2d 1017 (Ind.1984). A defendant who enters a guilty plea has extended a substantial benefit to the State and deserves to have a substantial benefit extended to him in return. *Gajdos*, 462 N.E.2d at 1025.

The United States Supreme Court has held a State may encourage a guilty plea by offering substantial benefits in return for the plea. *Corbitt*, 439 U.S. at 219, 99 S.Ct. at 497, 58 L.Ed.2d at 474. The plea may obtain for the defendant not

only the possibility or certainty of a lesser penalty than the sentence that could be imposed after a trial and a verdict of guilty but also of a lesser penalty than that required to be imposed after a guilty verdict by a jury. *Id.* at 219–20, 99 S.Ct. at 497–98, 58 L.Ed.2d at 474–75.

For those who plead guilty, that fact itself is a constitutionally permissible consideration in sentencing, a consideration that is not present when one is found guilty by a jury. *Id.* at 223–24, 99 S.Ct. at 500, 58 L.Ed.2d at 477. *See also Commonwealth v. Johnson,* 27 Mass.App.Ct. 746, 543 N.E.2d 22 (1989)(willingness to admit guilt may be a proper factor justifying more lenient sentencing). It cannot be said that defendants found guilty by a jury are penalized for exercising the right to a jury trial any more than defendants who plead guilty are penalized because they give up the chance of acquittal at trial. *Corbitt,* 439 U.S. at 226, 99 S.Ct. at 501, 58 L.Ed.2d at 478. In each instance, the defendant faces a multitude of possible outcomes and freely makes his choice. *Id.* Equal protection does not free those who made a bad assessment of risks or a bad choice from the consequences of their decision. *Id.* The Supreme Court has unequivocally recognized the constitutional propriety of extending leniency in exchange for a plea of guilty and of not extending leniency to those who have not demonstrated those attributes on which leniency is based. *Id.* at 224, 99 S.Ct. at 500, 58 L.Ed.2d at 477. *See United States v. Jansen,* 475 F.2d 312 (7th Cir.), *cert. denied,* 414 U.S. 826, 94 S.Ct. 130, 38 L.Ed.2d 59 (1973)(policy of leniency following guilty plea properly held by trial court to be inapplicable to situation where defendant puts government to its proof in full trial).

Guilty pleas are recognized as a significant step toward rehabilitation. *Hooten v. State,* 212 Ga.App. 770, 442 S.E.2d 836 (1994). A genuine admission of guilt may properly result in a lighter sentence than would be appropriate for an intransigent and unrepentant malefactor. *United States v. Stockwell,* 472 F.2d 1186 (9th Cir.1973). *See also Hooten,* 442 S.E.2d at 840 (plea of guilty can be, and frequently is, considered in sentencing). The defendant who opts to go to trial rather than negotiating a plea runs the risk of a harsher sentence than he would have received by pleading guilty. *United States v. Quejada–Zurique,* 708 F.2d 857 (1st Cir.

1983). While confronting a defendant with the risk of more severe punishment clearly may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices is an inevitable-and permissible-attribute of any legitimate system which tolerates and encourages the negotiation of pleas. *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978).

There are numerous factors that a defendant must weigh in a case before he decides to insist on his right to a trial. *State v. Williams,* 337 N.W.2d 387 (Minn.1983). The risk that the evidence adduced at trial will have an impact on the sentence the trial court imposes is a risk the defendant must be deemed to have accepted. *Id.* A trial judge may impose a greater sentence upon a defendant after the judge has heard the evidence at trial than he might have imposed in conjunction with a guilty plea. *West v. State,* 241 Ga.App. 877, 528 S.E.2d 287 (2000).

The relevant sentencing information available to the judge after a plea will usually be considerably less than that available after a trial. *Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). In the course of the proof at trial, the judge may gather a fuller appreciation of the nature and extent of the crimes charged. *Id.* The defendant's conduct during trial may give the judge insights into his moral character and suitability for rehabilitation. *Id.* On the other hand, many factors favor relative leniency for those who acknowledge their guilt-often expressing remorse-and thus help conserve scarce judicial and prosecutorial resources for those cases that merit the scrutiny afforded by a trial. *See Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Many guilty pleas are motivated, at least in part, by the hope or assurance of a lesser penalty than might be imposed if there were a guilty verdict after a trial. *Id.*

### D. Disparity of Sentences When Co–Defendant Pleads Guilty and Defendant Exercises Right to Stand Trial

When one defendant proceeds to trial and his accomplice pleads guilty, the sentences need not be identical. *Gajdos v. State,* 462 N.E.2d 1017 (Ind.1984). A sentence imposed on a

co-defendant who pleaded guilty does not provide a valid basis of comparison to a sentence imposed after a trial. *People v. Taylor,* 318 Ill.App.3d 464, 252 Ill.Dec. 107, 742 N.E.2d 357 (2000); *People v. Nutall,* 312 Ill.App.3d 620, 245 Ill.Dec. 515, 728 N.E.2d 597 (2000). Dispositional concessions are properly granted to defendants who plead guilty since the public interest in the effective administration of criminal justice is served. *Taylor,* 252 Ill.Dec. 107, 742 N.E.2d at 368; *Nutall,* 245 Ill.Dec. 515, 728 N.E.2d at 610. *See also People v. Milton,* 182 Ill.App.3d 1082, 131 Ill.Dec. 671, 538 N.E.2d 1227 (1989)(holding it is proper for a trial court to grant leniency in sentencing a defendant who by his plea ensured prompt and certain application of correctional measures to him, acknowledged his guilt and showed a willingness to assume responsibility for his conduct).

A criminal defendant has no constitutional right to be given a sentence equal in duration to that of his or her co-defendants. *United States v. Smith,* 839 F.2d 175 (3rd Cir.1988). The sentence received by one joint defendant is irrelevant on the trial of another. *Johnson v. State,* 246 Ga. 126, 269 S.E.2d 18 (1980).

Disparity between a sentence imposed on a defendant who pleads guilty and on another who is convicted after trial is not, standing alone, enough to establish that the latter has been punished for exercising his constitutional right to stand trial. *United States v. Wilson,* 506 F.2d 1252 (7th Cir.1974). *See also People v. Hernandez,* 319 Ill.App.3d 520, 253 Ill.Dec. 550, 745 N.E.2d 673 (2001)(disparity between sentence given to defendant convicted in jury trial and another imposed upon defendant who pled guilty, without more, does not mandate reduction in sentence). The defendant has merely shown that he received a harsher sentence than a co-defendant who pleaded guilty. *United States v. Harris,* 761 F.2d 394 (7th Cir.1985). Without more, the defendant has failed to demonstrate any constitutional violation. *Id.* Although a heavier sentence for one who has been convicted after trial and a lighter sentence for one who pleads guilty are in a sense two sides of the same coin, it is within proper bounds for the court to preserve some leeway so that it is able to extend leniency in consideration of the cooperation and at least superficial peni-

tence evidence by one who pleads guilty. *Wilson,* 506 F.2d at 1259–60.

As a general rule, so long as a sentence is within the statutory maximum, the court will not exercise its supervisory powers to inquire into the propriety of a sentence, even when that sentence creates a disparity with the sentences of co-defendants. *United States v. Rauhoff,* 525 F.2d 1170 (7th Cir.1975)(citing *Hill v. United States,* 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)). One exception to this rule exists where a trial judge has attempted to punish a defendant for the exercise of his Sixth Amendment right to a trial by jury. *Id.*

## II. *JUDGE'S DISCRETIONARY AUTHORITY AS TO SENTENCING*

A trial judge is allowed broad discretion in sentencing within statutory limits. *Brooks v. State,* 325 S.C. 269, 481 S.E.2d 712 (1997); *Garrett v. State,* 320 S.C. 353, 465 S.E.2d 349 (1995). *See also State v. Franklin,* 267 S.C. 240, 226 S.E.2d 896 (1976)(trial judge is given wide discretion in determining what sentence should be imposed). A sentence is not excessive if it is within statutory limitations and there are no facts supporting an allegation of prejudice against a defendant. *Brooks,* 325 S.C. at 272, 481 S.E.2d at 713. Absent partiality, prejudice, oppression, or corrupt motive, this Court lacks jurisdiction to disturb a sentence that is within the limit prescribed by statute. *Stockton v. Leeke,* 269 S.C. 459, 237 S.E.2d 896 (1977); *Franklin,* 267 S.C. at 246, 226 S.E.2d at 898. *See also Garrett,* 320 S.C. at 356, 465 S.E.2d at 350 (" 'It is well settled in this State that this Court has no jurisdiction to disturb, because of alleged excessiveness, a sentence which is within the limits prescribed by statute unless: (a) the statute itself violates the constitutional injunction, Article I, Sec. 19, against cruel and unusual punishment, or (b) the sentence is the result of partiality, prejudice or pressure or corrupt motive.' "); *State v. Bolin,* 209 S.C. 108, 39 S.E.2d 197 (1946)(length of prison sentence rests in sound discretion of trial court unless partiality, prejudice, oppression or corrupt motive is shown).

The role of appellate courts in reviewing sentences is to determine: (1) whether the exercise of discretion by the sentencing court was based upon findings of fact grounded in competent, reasonably credible evidence; (2) whether the sentencing court applied the correct legal principles in exercising its discretion; and (3) whether the application of the facts to the law was such a clear error of judgment that it shocks the conscience. *State v. Megargel,* 143 N.J. 484, 673 A.2d 259 (1996). There is a strong public policy against interference with a trial court's sentencing discretion. *See State v. Echols,* 175 Wis.2d 653, 499 N.W.2d 631 (1993).

The trial court has broad discretionary powers in imposing a sentence because it is generally in a better position than the reviewing court to determine the appropriate sentence by weighing such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *People v. Hernandez,* 319 Ill.App.3d 520, 253 Ill.Dec. 550, 745 N.E.2d 673 (2001). Consequently, the reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently. *People v. Stacey,* 193 Ill.2d 203, 250 Ill.Dec. 4, 737 N.E.2d 626 (2000).

### III. *EXERCISE OF RIGHT TO JURY TRIAL*

A trial court may not impose a greater sentence on a defendant because the defendant exercised his constitutional right to stand trial rather than plead guilty. *See Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). Article III, Section 2, Clause 3 and the Sixth Amendment to the United States Constitution, along with Article I, Section 14 of the South Carolina Constitution, grant every criminal defendant the absolute right to plead not guilty and to be tried by a jury.

### IV. *LAW/ANALYSIS*

After the jury announced the verdict, Brouwer's attorney and the trial judge engaged in the following colloquy regarding sentencing of Brouwer:

[Defense Counsel]: I think that pursuant to *Davis v. State,* that other than some showing other than the fact that she

chose to enter a guilty plea and he chose to go to trial, that it would be appropriate for the court to give this defendant the same sentence, a proportionate sentence, as Ms. Kaplan received.... We would ask that the court take that into consideration....

. . . .

[The Court]: [Defense counsel], let me respond to your reference to the *Davis* case.... And you are talking about where the trial judge made a reference to the fact that because he exercised his right to a jury trial, now he has to impose a certain sentence.

What I indicated to you in chambers was simply what I indicate to anyone who is there. The court wishes to say that we are not going to have that involved, then let them do it and we will put it on the record in this case, and I welcome the instruction, because I see-I distinguish that *Davis* case from what I said, because I never said to you that if he exercises his right to a jury trial, I would punish him more severely. I said to you, as I recall, and I think I said, because I say it just about every time I talk to someone, I'm a judge that gives serious consideration for someone admitting their guilt. I think that's important. It was told to me when I first started practicing law years ago by Judge Clarence Singletary, who was the judge in my circuit, that I believe that that's the first step towards rehabilitation.....

... [T]here is no way in rhyme or reason for us to ever give a sentence for someone pleading guilty the same sentence for a jury trial. Then we have ignored the fact that a person has admitted their guilt.

*Now, I don't think a person needs to be punished because of their jury trial, because that's a Constitutional Right. And I, as a trial judge, have never, nor will I ever, punish someone for exercising their right to a jury trial.* I think that is something valuable. I take it very seriously as this.... But one of the factors that I will always consider, ... is consider someone who admits their guilt.

. . . .

So the sentence of the court-and the court will take into consideration that it is his first offense in imposing this sentence and give him a chance, to some extent. But the sentence is that you be committed to the Department of Corrections for a term of four years, provided upon the service of six months, the balance is suspended, and I'm going to place you on probation for a period of three years. (Emphasis added).

Relying upon *State v. Hazel,* 317 S.C. 368, 453 S.E.2d 879 (1995), and *Davis v. State,* 336 S.C. 329, 520 S.E.2d 801 (1999), the majority concludes the trial court's sentencing determination for Brouwer was improper and requires reversal. The majority's reliance upon these cases is misplaced.

In *State v. Hazel,* the trial judge gave the following response to the defendant's request for sentencing under the Youthful Offender Act (YOA): "Well, it's one thing, if he'd pled guilty, I'd have considered that; but taking into consideration the age and where he was and the time it was, the sentence of the court is you be confined to the State Board of Corrections for a period of fifteen years and pay a fine of twenty-five thousand dollars." *Hazel,* 317 S.C. at 369, 453 S.E.2d at 879. The Supreme Court found the trial judge relied heavily on Hazel's exercise of his right to a jury trial as weighing against sentencing under the YOA. The *Hazel* Court observed that courts have long adhered to the principle forbidding a trial court from improperly considering the defendant's exercise of his constitutional right to a jury trial as an influential factor in determining the appropriate sentence. The Court concluded the trial judge abused his discretion by considering the fact that Hazel exercised his right to a jury trial.

In *Davis v. State,* after the trial court sentenced the defendant, defense counsel moved to have the sentence reduced. The following discussion occurred between the trial court and defense counsel:

[Defense Counsel]: It's for reduction, your honor. Your honor, as you know Mr. Adams couldn't be here today and he—as Mr. Davis—he's the one who represented Mr. Davis at trial and throughout the period since Mr. Davis was sent to us by the clerk of court. Mr. Adams has asked me to

make this motion on Mr. Davis' behalf for a reduction in the sentence. There was no plea bargain offered. Mr. Adams, I understand, made several attempts to negotiate a plea and law enforcement refused. This is the reason that this case went to trial in the first place. There were two drug dealers who did plead guilty during the time that your honor has been here with us this past couple of weeks and they have received lower sentences. I think one got seven years, J.J. J.J. got seven years and Dubois got eighteen months and I believe both of those were negotiated pleas. . . .

[State]: May it please the court, your honor? Cory Fleming from our office prosecuted the case at trial. I'm familiar with the case. One reason an offer was never extended in the case was the only discussion that Mr. Adams ever had with my office was for some type of probationary sentence and our office didn't agree to that, and it's accurate in regard to John Paul Thompson and Thomas Jefferson Dubois as to the sentences that they received.

[Defense Counsel]: Mr. Davis has no prior drug convictions. I mean, he does have a record, but he has no drug convictions.

[Court]: Yes, ma'am, but he didn't plead guilty. Those other two people, they pled guilty. They admitted what they had done and to me that's the first step towards rehabilitation is admitting that you did something wrong and you're pleading guilty and when a fellow wants a trial which he's entitled to as a matter of law—and that's fine.

[Defense Counsel]: I believe that when Mr. Adams discussed it with Mr. Branham that Mr. Branham stated the fact that they wanted to hang him high.

[Court]: Well, the jury found him guilty and I sentenced him and I'm not going to change my sentence. Thank you very much.

*Davis*, 336 S.C. at 332, 520 S.E.2d at 802.

Davis argued relief should be granted because his trial counsel failed to object when the trial judge, after sentencing Davis, indicated he considered Davis' decision to have a jury trial as a factor in sentencing. The Supreme Court agreed and determined:

In the above colloquy, defense counsel argued to the trial court that similarly situated defendants had received lower sentences than [Davis]. In response to this argument, the trial judge unequivocally stated that the other defendants had, in fact, pled guilty. The trial judge further expressed his preference for guilty pleas by explaining that such admissions of responsibility were the first steps toward rehabilitation. We find these statements clearly revealed that the trial judge, in sentencing [Davis], improperly considered [Davis'] decision to proceed with a jury trial. *See Hazel, supra.*

*Davis,* 336 S.C. at 333, 520 S.E.2d at 803.

*State v. Hazel* and *Davis v. State* are distinguishable from the case at bar. In the instant case, unlike *Hazel* and *Davis,* the trial judge expressly stated that Brouwer's exercise of his right to a trial did not affect the sentence imposed by the judge.

By proceeding to trial, Brouwer must be deemed to have accepted the risk that he could receive a sentence longer than he would have received by pleading guilty or than that received by Kaplan. *See State v. Williams,* 337 N.W.2d 387 (Minn.1983)(explaining that there are numerous factors that defendants must weigh before deciding to go to trial and that defendants who so choose are deemed to have accepted the risk of a longer sentence).

The judge's remarks in the case *sub judice* reflect a permissible extension of leniency towards the co-defendant, Kaplan, for taking a "first step towards rehabilitation," rather than an impermissible increase in Brouwer's sentence for exercising his right to trial. While an accused's punishment should not be increased due to his exercise of his right to a trial, it is not forbidden to extend a proper degree of leniency in return for guilty pleas, and to withhold leniency from those pleading not guilty. 24 C.J.S. *Criminal Law* § 1474 (1989)(citing *Corbitt v. New Jersey,* 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978)).

The judge utilized the guilty plea in determining Kaplan's sentence by being lenient on her but not in determining what sentence to impose on Brouwer. Brouwer is not being punished for going to trial. However, Kaplan is properly being rewarded for admitting her guilt and pleading guilty. The

judge referred to Kaplan's guilty plea only to point out that remorse and admission was a first and important step toward rehabilitation. The judge was articulating the rationale for Kaplan's-not Brouwer's-sentence. A show of lenience to those who exhibit contrition by admitting guilt does not carry a corollary that the judge indulges a policy of penalizing those who elect to stand trial. *United States v. Araujo*, 539 F.2d 287 (2d Cir.1976); *United States v. Thompson*, 476 F.2d 1196 (7th Cir.1973).

In sentencing Brouwer, the judge stated: "I have to assume that Brouwer found nothing wrong with [his conduct]." It is clear the potential for rehabilitation was a factor the judge considered when determining the sentence in this case. Rehabilitation is a proper sentencing consideration. *See People v. Speed*, 129 Ill.App.3d 348, 84 Ill.Dec. 612, 472 N.E.2d 572, 573 (1984)("[I]t is ... well established that the court may consider the lack of a penitent spirit in determining the appropriate sentence to be imposed upon a defendant, since this is a factor which may have a bearing on the defendant's potential for rehabilitation.").

The majority places a "judicial strait jacket" on a Circuit Judge in the sentencing procedure. A truthful, straightforward disavowal by the Circuit Judge of any consideration of the exercise of the constitutional right of jury trial by a defendant is disregarded and absolutely ignored. Effectually, this case will implement "muted silence" in all sentencing activities. "Pass the sentence and move on" becomes the guideline.

In reviewing the entire sentencing procedure with exactitude, I come to the inescapable conclusion that *factually* and *legally* there is no evidence that the Circuit Judge used or considered in any manner the exercise of Brouwer's jury trial right when sentencing Brouwer. To the contrary, the evidentiary record demonstrates with remarkable clarity a pristine and salubrious sentencing procedure in the instant case. I reject the notion that the discussion in the record *inter sese* court, counsel, and defendant reveals any indicia of sentencing irregularity.

The policy articulated by the majority is infected with expository deficiency. Indubitably, appellate courts should

not become "shrinking violets" in the exercise of appellate review, but appellate entities are restricted to constitutional parameters in reviewing sentencing procedures used by a Circuit Judge.

Here, the judge did not abuse his discretion in sentencing Brouwer. The dissemination of obscene material is a serious crime. A person convicted of violating § 16–15–305(A) is guilty of a felony. S.C.Code Ann. § 16–15–305(H) (Supp. 2000). The maximum sentence is five years in prison or a fine of $10,000, or both. Brouwer was found guilty of this offense. The judge imposed a sentence on Brouwer which was less than the maximum sentence provided by the statute. Brouwer's sentence was well within the statutory limits.

Accordingly, I would AFFIRM the sentence of Brouwer.